No. 92,867

Lauren K. Welch, M.D.; Roger Evans, M.D.; James C. Mershon, M.D.; Zack Razek, M.D.; Badr Idbeis, M.D.; Jeanette Z. Habashy; Doris Uhlig, Margaret F. Wray, and Larry Spikes, *Appellants*, v. Via Christi Health Partners, Inc., a Kansas Corporation, and MR Imaging Center, L.P., a Kansas Limited Partnership, *Appellees*.

(133 P.3d 122)

Opinion filed May 5, 2006.

*Kurt A. Harper,* of Sherwood & Harper, of Wichita, argued the cause, and *William E. Dakan,* of the same firm, was with him on the briefs for appellants.

*Gary L. Ayers,* of Foulston Siefkin, LLP, of Wichita, argued the cause, and *Martha Aaron Ross,* of the same firm, was with him on the brief for appellees.

The opinion of the court was delivered by

DAVIS, J.: The plaintiffs, 9 of 21 limited partners of defendant MR Imaging Center, L.P., brought suit against the defendants, Via Christi Health Partners, Inc., the general partner and majority limited partner, and MR Imaging Center, L.P., seeking a statutorily defined buyout price for their interests after Via Christi obtained a valuation of the business and caused the limited partnership agreement to be amended to permit a merger with a newly created limited liability company, MRI, LLC. Under the merger agreement, the plaintiffs were cashed out and the limited partnership was subsequently converted into a limited liability company, MR Imaging, LLC. The plaintiffs appeal the dismissal of their case on summary judgment. We transferred the case on our own motion pursuant to K.S.A. 20-3018(c).

Defendant MR Imaging Center, L.P., a Kansas limited partnership, was formed on or about September 17, 1985, and operated a medical imaging business. The plaintiff investors are Lauren K. Welch, M.D., Roger Evans, M.D., James C. Mershon, M.D., Zack Razek, M.D., Badr Idbeis, M.D., Jeanette Z. Habashy, Doris Uhlig, Margaret F. Wray, and Larry Spikes. Prior to July 31, 2003, the plaintiffs collectively held about 15% of the ownership interest in MR Imaging Center, L.P. The majority owner was the predecessor in interest to defendant Via Christi Health Partners, Inc. (Via Christi), which owned a combined interest of approximately 71% of the MR Imaging Center, L.P.

On July 15, 2003, Via Christi, as general partner of MR Imaging Center, L.P., sent a Notice of Special Meeting of the Partners of

MR Imaging Center, L.P., to the plaintiffs and the other limited partners. In that notice was information advising the limited partners that on July 31, 2003, the limited partners would be asked to approve an amendment to the Agreement of Limited Partnership and a merger agreement to allow for the merger of the limited partnership with a newly created entity, MRI, LLC, a Kansas limited liability company, which was organized by Via Christi on July 11, 2003. Via Christi was the controlling member and owned 64.2% of MRI, LLC immediately before the merger. The plaintiffs were not informed of the intentions of Via Christi or its actions in preparing for the forced buyout of the plaintiffs' interests prior to July 15, 2003.

Prior to the voting on July 31, 2003, the Limited Partnership Agreement for MR Imaging, L.P. did not permit the partnership to enter into a merger agreement on less than a unanimous vote. The proposed amendment allowed the limited partnership to merge with " 'another general or limited partnership, corporation, or limited liability company' " without further approval of the minority limited partners.

The merger agreement provided that the general and limited partners would receive $78,408 per unit for the partners' respective ownership interests. Attached to the Notice of Special Meeting was a letter from Via Christi describing the transaction, with a copy of an independent valuation performed by Paragon Health Capital Corporation (Paragon) pursuant to a request from Via Christi on March 25, 2003. Paragon rendered an independent opinion of both fair market value and fair value (without marketability and minority discounts.) The $78,408 tendered to the partners for their partnership units was the " 'fair value' " of those interests in an ongoing business without discounts for lack of marketability or the fact they were minority investors. The plaintiffs controverted this statement, arguing that their subsequent appraisal demonstrated the fair value to be $117,533 per unit.

The notification letter provided that Via Christi, as the general partner, intended to adopt the proposed amendment and approve the merger: "Because [Via Christi] owns a majority of the Units of MR Imaging, L.P. and has elected to vote in favor of the merger,

the outcome of the partnership meeting is certain, and, subject to the terms of the merger agreement, the merger will be effective as of July 31, 2003." The notice of special meeting similarly provided: "Via Christi Health Partners, Inc. as general partner and as a limited partner with sufficient Units to approve the merger, will vote to approve the amendment and the merger. Accordingly, while the other partners are entitled to vote on the approval of the amendment and the merger, their approval is not necessary."

On July 31, 2003, the amendment to the partnership agreement and the merger agreement were approved. Of the 20 minority investors, 6 attended either in person or by proxy and voted against the amendment and the merger, representing 11.88% of the total ownership, less than one-half of the 28.91% minority interest in MR Imaging Center, L.P. Five of those six are plaintiffs in this case, along with four other limited partners.

Pursuant to the notice of special meeting, the newly created entity, MRI, LLC (controlled and managed by Via Christi), was merged into MR Imaging Center, L.P. (also controlled and managed by Via Christi), which was then converted into MR Imaging, LLC. After the merger and conversion, Via Christi held a smaller share of partnership interests than it had prior to the merger and conversion. Its partnership interest went from approximately 71% to approximately 64%. Via Christi did not acquire the plaintiffs' partnership interests.

Pursuant to the merger agreement approved by both MR Imaging Center, L.P., and MRI, LLC, MR Imaging Center, L.P., tendered $78,408 per unit for all MR Imaging Center, L.P., units, including those held by Via Christi, those held by the other non-plaintiff owners, and those owned by the plaintiffs. Everyone received the same price, which was the fair value price determined by the valuation company, Paragon. The plaintiffs rejected this tender and filed the present lawsuit against Via Christi and MR Imaging Center, L.P.

In the petition, the plaintiffs alleged that: (1) Via Christi breached its fiduciary duties to the plaintiffs by eliminating the limited partners' ownership interests in MR Imaging Center, L.P., through a freeze-out merger; (2) the plaintiffs were entitled to a

determination of the buyout price for the plaintiffs' interests in the limited partnership pursuant to K.S.A. 56a-701, with interest thereon from July 31, 2003; and (3) the plaintiffs were entitled to attorney fees, appraiser and expert fees, and other costs.

The defendants filed a motion for summary judgment, arguing the plaintiffs were not entitled to statutory appraisal rights, attorney fees, appraiser and expert fees, and other expenses and that the plaintiffs had not established a breach of fiduciary duties. After a hearing, the district court granted the defendants' motion for summary judgment, reasoning in relevant part:

"3. Plaintiffs do not have statutory appraisal rights. Plaintiffs are not entitled to a determination of a buyout price pursuant to K.S.A. 2003 Supp. 56a-701, which does not apply to the merger in this case.

"4. Similarly, Plaintiffs are not entitled to attorney's fees, interest associated with a statutory appraisal, or the fees and expenses of their appraisers and experts, because K.S.A. 2003 Supp. 56a-701 is inapplicable.

"5. Plaintiffs' claimed damages are unliquidated and Plaintiffs are not entitled to prejudgment interest.

"6. Plaintiffs have not produced evidence to establish a dispute as to a material fact regarding their allegation that Via Christi Health Partners breached the duties contained in K.S.A. 2003 Supp. 56a-404.

"7. Defendants are entitled to judgment on Plaintiffs' claims regarding fiduciary duty, good faith, and fair dealing because Plaintiffs have not produced evidence to establish a dispute as to a material fact regarding specific acts of fraud, misrepresentation, or other items of misconduct.

"8. Because the parties have not deposed the appraiser (Paragon) utilized by Defendants to arrive at the valuation of Plaintiffs' minority interests, the Court finds that the sole remaining issue is whether or not the appraiser was independent.

"9. The parties have stipulated that if Paragon's appraisers were to testify, they would testify they were independent. Therefore, summary judgment may be granted as to this last issue left open by the trial court."

On appeal before this court, the plaintiffs challenge the district court's granting of defendants' motion for summary judgment finding the plaintiffs were not entitled to statutory appraisal rights and that the defendants did not breach fiduciary obligations owed to the plaintiffs. We apply the following standards of review:

"Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is

entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied." *State ex rel. Stovall v. Reliance Ins. Co.*, 278 Kan. 777, Syl. ¶ 1, 107 P.3d 1219 (2005).

Moreover, the interpretation of a statute is a question of law permitting unlimited review. *State v. Legero*, 278 Kan. 109, Syl. ¶ 1, 91 P.3d 1216 (2004).

## *Statutory Appraisal Rights*

The plaintiffs argue the district court erred by failing to hold that they were dissociated partners under the Kansas Uniform Partnership Act (KUPA), K.S.A. 56a-101 *et seq.*, entitled to specific buyout rights of their interests under K.S.A. 56a-701, which provides in relevant part:

"(a) If a partner is dissociated from a partnership without resulting in a dissolution and winding up of the partnership business under K.S.A. 56a-801, the partnership shall cause the dissociated partner's interest in the partnership to be purchased for a buyout price determined pursuant to subsection (b).

"(b) The buyout price of a dissociated partner's interest is the amount that would have been distributable to the dissociating partner under subsection (b) of K.S.A. 56a-807 if, on the date of dissociation, the assets of the partnership were sold at a price equal to the greater of the liquidation value or the value based on a sale of the entire business as a going concern without the dissociated partner and the partnership were wound up as of that date. Interest must be paid from the date of dissociation to the date of payment.

. . . .

"(i) A dissociated partner may maintain an action against the partnership, pursuant to subsection (b)(2)(ii) of K.S.A. 56a-405, to determine the buyout price of that partner's interest, any offsets under subsection (c), or other terms of the obligation to purchase. The action must be commenced within 120 days after the partnership has tendered payment or an offer to pay or within one year after written demand for payment if no payment or offer to pay is tendered. The court shall determine the buyout price of the dissociated partner's interest, any offset due under subsection (c), and accrued interest, and enter judgment for any additional payment or refund. If deferred payment is authorized under subsection

(h), the court shall also determine the security for payment and other terms of the obligation to purchase. The court may assess reasonable attorney's fees and the fees and expenses of appraisers or other experts for a party to the action, in amounts the court finds equitable, against a party that the court finds acted arbitrarily, vexatiously, or not in good faith. The finding may be based on the partnership's failure to tender payment or an offer to pay or to comply with subsection (g)."

The defendants respond that the plaintiffs are not dissociated partners and have no statutory appraisal rights under the KUPA, the Kansas Revised Uniform Limited Partnership Act (KRULPA), K.S.A. 56-1a01 *et seq.*, or the Mixed Entity Merger statutes, K.S.A. 17-7701 *et seq.*, because this case involves the merger of a limited partnership and a limited liability company. As this case involves the interplay of three different statutory schemes, we will examine each one in our resolution of the issues.

(1)Mixed Entity Merger Statutes (K.S.A. 17-7701 *et seq.*)

The plaintiffs argue that K.S.A. 17-7707(k) applies to the transaction in this case and preserves their right to a buyout price determination.

"Since 1995, Kansas law has contained specific and separate provisions authorizing and governing a merger or consolidation involving a domestic LLC and one or more other domestic or foreign business entities at least one of which is not an LLC." Hecker, *The Kansas Revised Limited Liability Company Act*, 69 J.K.B.A. 16, 38 (Nov./Dec. 2000). These provisions are discussed in K.S.A. 17-7701 *et seq.*, the Mixed Entity Merger statutes. The following statutes are relevant to this case:

K.S.A. 2005 Supp. 17-7701(d) provides:

"(d) Subject to the provisions of this section, any merger or consolidation between one or more domestic corporations and any one or more constituent entities at least one of which is not a corporation, one or more domestic limited partnerships and any one or more constituent entities at least one of which is not a limited partnership, or one or more domestic limited liability companies and any one or more constituent entities at least one of which is not a limited liability company shall be governed by and subject to the provisions of K.S.A. 17-7701 through 17-7708, and amendments thereto."

K.S.A. 17-7703 provides:

"Subject to the provisions of K.S.A. 17-7701 through 17-7708, any one or more domestic corporations may merge or consolidate into or with any one or more persons at least one of which is not a corporation, any one or more domestic limited partnerships may merge or consolidate into or with any one or more persons at least one of which is not a limited partnership, and any one or more domestic limited liability companies may merge or consolidate into or with any one or more persons at least one of which is not a limited liability company."

K.S.A. 17-7704(c) provides that each constituent entity shall enter into a written agreement of merger or consolidation, which includes "the manner and basis of converting the interests or shares of stock in each constituent entity in the merger or consolidation into interests, shares or other securities or obligations, the case may be, of the surviving entity, of the new entity or of any other person, or, in whole or in part, into cash or other property."

K.S.A. 2005 Supp. 17-7705(a)(2) provides that a constituent entity that is a domestic limited partnership shall have the agreement of merger or consolidation "approved by all general partners and by all of the limited partners unless otherwise provided in the certificate or agreement of limited partnership." In this case, the limited partnership agreement of MR Imaging Center, L.P., was amended immediately prior to the merger to expressly allow it to be approved by a two-thirds vote.

K.S.A. 17-7707(k), addressing the effects of consummation of merger or consolidation, provides: "Nothing in K.S.A. 17-7701 through 17-7708 shall abridge or impair any dissenter's appraisal shares or their equivalent rights that may otherwise be available to the members or shareholders or other holders of an interest, in any constituent entity." A constituent entity is defined as "each person that is a party to a merger or consolidation subject to K.S.A. 17-7701 through 17-7708." K.S.A. 17-7702(a).

The plaintiffs and the defendants seem to agree that the merger between MR Imaging Center, L.P., and MRI, LLC, is governed by this statutory authority. They disagree, however, whether this is the only statutory authority which can be utilized in assessing statutory appraisal or buyout rights to the limited partners in this case.

"The right to appraisal under Kansas law is purely statutory." *Wichers v. Solomon Valley Feed Lot, Inc.*, 10 Kan. App. 2d 486,

487, 704 P.2d 383 (1985). Appraisal statutes should be liberally construed for the protection of the dissenting shareholders; however, " 'a liberal construction does not call for an abandonment of orderly procedure prescribed by statute.' [Citation omitted.]" *Vernon v. Commerce Financial Corp.*, 32 Kan. App. 2d 506, 509, 85 P.3d 211 (2004). In *Wichers*, the Kansas Court of Appeals held that dissenting shareholders exercising their appraisal rights were not entitled to an element of value they sought which was specifically excluded by the appraisal statute. 10 Kan. App. 2d at 487.

The defendants rely upon the doctrine of independent legal significance in support of their argument. "Under the doctrine of independent legal significance, action taken under one article of the Kansas Corporation Code is legally independent and its validity not dependent upon nor to be tested by the requirements of other unrelated sections under which the same result may be attained by different means." *In re Hesston Corp.*, 254 Kan. 941, Syl. ¶ 7, 870 P.2d 17 (1994). In *Hesston*, this court found that merger is legally distinct from redemption under the Kansas Corporation Code, "in that Article 67 allows one or more corporations to merge or consolidate, and Article 64 governs redemption of the stock." 254 Kan. 941, Syl. ¶ 8.

The defendants argue the doctrine of independent legal significance prevents the plaintiffs from inferring any appraisal rights from the partnership-to-partnership merger statutes found in KUPA, specifically, K.S.A. 56a-906(e), because the exclusive authority for the merger in this case was under K.S.A. 17-7701 *et seq.*, which does not provide for appraisal rights. Citing various merger statutes, the defendants point out that no appraisal rights exist for the merger of two limited partnerships under K.S.A. 56-1a609 of KRULPA and that appraisal rights must be contained in the operating or merger agreements for the merger of two limited liability corporations under K.S.A. 2005 Supp. 17-7682. They contend it is the prerogative of the legislature to provide appraisal rights for one form of merger but not for another, and each entity merger must comply with the strictures of the authorizing statute and is limited to the remedies found in the authorizing statute.

The plaintiffs counter that the doctrine of independent legal significance requires, rather than precludes, that plaintiffs be granted their buyout price remedies under KUPA. They reason that if Via Christi performed this merger under the Mixed Entity Merger statutes, then the entire statutory framework for the merger applies. They contend the defendants' argument disregards the express language of the Mixed Entity Merger statutes, which preserves "any dissenter's appraisal shares or their equivalent rights *that may otherwise be available* to the members or shareholders or other holders of an interest, in any constituent entity." (Emphasis added.) See K.S.A. 17-7707(k).

None of the other statutory provisions, as discussed below, provide for the merger of a limited partnership with a limited liability company. As such, the parties are correct that K.S.A. 2005 Supp. 17-7701(d) and K.S.A. 17-7703 provide the statutory authority for the merger in this case, and the parties are bound by that authority pursuant to the independent legal significance doctrine. Although these statutes do not themselves grant statutory appraisal or buyout rights, the plaintiffs are correct that the doctrine of independent legal significance would not preclude looking outside of the Mixed Entity Merger statutes based upon the plain language of K.S.A. 17-7707(k), which preserves any appraisal or equivalent rights which may otherwise be available to the limited partners in this case. In fact, the defendants seem to acknowledge that this doctrine does not preclude looking beyond K.S.A. 17-7701 *et seq.*, as they concede that subsection (k) would not abridge appraisal rights that might exist in the operating or merger agreement of a limited liability company under K.S.A. 2005 Supp. 17-7682. Thus, our analysis shifts to whether the provisions of KRULPA or KUPA provide for statutory appraisal or buyout rights to the limited partner plaintiffs in this case.

(2) Kansas Revised Uniform Limited Partnership Act (K.S.A. 56-1a01 *et seq.*)

The Kansas Revised Uniform Limited Partnership Act (KRULPA) is based upon the Revised Uniform Limited Partnership Act of 1976 (RULPA), 6 U.L.A. 220 (2003), and the Delaware

Revised Uniform Limited Partnership Act (Del. Code Ann. 6, §
15-101 *et seq.* [2005]) and applies to all domestic limited partner-
ships formed after January 1, 1984. See K.S.A. 56-1a603(a); K.S.A.
56-1a01 *et seq.*, Revisor's Note to KRULPA, Article 1a; *Temple v.
White Lakes Plaza Assoc., Ltd.*, 15 Kan. App. 2d 771, 777, 816 P.2d
399 (1991).

"The Uniform Partnership Act and case law developed there-
under have been applied to limited partnerships. 59A Am. Jur. 2d,
Partnerships § 1235. Additionally, RULPA itself provides that for
cases not covered by its provisions, the Kansas Uniform Partner-
ship Act (KUPA) . . . should be applied. K.S.A. 56-1a604." *Tem-
ple*, 15 Kan. App. 2d at 778. See K.S.A. 56-1a604 ("In any case not
provided for in the Kansas revised limited partnership act, the pro-
visions of the Kansas uniform partnership act [K.S.A. 56a-101 *et
seq.*, and amendments thereto] shall govern.").

The plaintiffs argue that the defendants have sought to shift this
case from a question of rights that limited partners have upon their
involuntary dissociation from a partnership to a question of ap-
praisal rights in the event of the merger. They argue the defendants
frame the case as being limited to rights granted by certain Kansas
Corporation Code provisions, while giving no recognition to the
rights expressly reserved to dissociated partners under applicable
partnership law. As such, they claim it is necessary to examine the
provisions of KRULPA and KUPA.

The plaintiffs continue that although KRULPA contains provi-
sions for the withdrawal of a limited partner, the dissolution and
winding up of a limited partnership, and the merger of a domestic
limited partnership with or into one or more limited partnerships,
it does not provide for the dissociation of a limited partner, the
right of a dissociated partner to a determination of the buyout price
of the partner's interest, or the merger of a limited partnership
with any type of entity other than another limited partnership. As
such, they contend the provisions of KUPA apply pursuant to
K.S.A. 56-1a604.

The defendants contend that one does not reach or use K.S.A.
56a-601 (KUPA) for dissociation resulting from withdrawal be-

cause withdrawal of a limited partner is specifically provided for in K.S.A. 56-1a353(b) (KRULPA):

"A limited partner may withdraw from a limited partnership at the time or upon the happening of events specified in writing in the partnership agreement and in accordance with the partnership agreement. If the agreement does not specify in writing the time or the events upon the happening of which a limited partner may withdraw, the limited partner shall have no right to withdraw."

Additionally, K.S.A. 56-1a354 provides:

"Except as provided in K.S.A. 56-1a351 through 56-1a358, upon withdrawal any withdrawing partner is entitled to receive any distribution to which the partner is entitled under the partnership agreement. If not otherwise provided in the agreement, *the withdrawing partner is entitled to receive, within a reasonable time after withdrawal, the fair value of the partner's interest in the limited partnership as of the date of withdrawal,* based upon the partner's right to share in distributions from the limited partnership." (Emphasis added.)

Our review of these statutes reveals that the defendants' argument is without merit. As the plaintiffs point out in their reply brief, the plaintiffs never sought to withdraw from the limited partnership, such withdrawal was not permitted by the limited partnership agreement or K.S.A. 56-1a353(b), and their claims were not based upon the right to withdraw or the rights available to a limited partner who withdraws from the limited partnership. Rather, the question to be resolved under this issue is whether KRULPA provides any appraisal or buyout rights to involuntarily *dissociated* limited partners of a limited partnership following a *merger* with a limited liability company.

KRULPA does not provide for the rights of a dissociated limited partner, nor does it provide for the merger of a limited partnership with anything other than another limited partnership: "Pursuant to an agreement, a domestic limited partnership may merge or consolidate with or into one or more limited partnerships formed under the laws of this state or any other state, with such limited partnership as the agreement shall provide being the surviving or resulting limited partnership." K.S.A. 56-1a609(a). As the defendants point out, this lone merger statute does not provide for appraisal rights, payments for fair value, payment of interest, appraiser fees, expert fees, or attorney fees. Nevertheless, it is

inapplicable to this case involving the merger of a limited partnership with a limited liability company.

Further support for the conclusion that KRULPA does not provide for the rights of dissociated limited partners upon a merger is found by examining the 2001 revisions to RULPA. In 2001, the Drafting Committee for the New Uniform Limited Partnership Act dramatically revised RULPA to create a new "stand alone" act which was "de-linked" from both UPA and RUPA. The Committee explained that the stand alone act was preferable in part because the consequences of linkage were not always clear and it would eliminate confusion as to which issues were solely subject to RULPA and which required reference to RUPA. See Uniform Limited Partnership Act (2001) (ULPA), 6A U.L.A. 2, Prefatory Note, pp. 3-4 (2003).

In comparing RULPA with the new 2001 limited partnership act, the Committee specifically recognized that RULPA *did not address limited partner involuntary dissociation,* but the new Act provides a lengthy list of causes, taken with some modification from RUPA § 601 (see K.S.A. 56a-601). Contrary to the current version of KRULPA, the 2001 ULPA specifically provides that a limited partner is dissociated due to "the limited partnership's participation in a conversion or merger under [Article] 11, if the limited partnership: . . . (B) is the converted or surviving entity but, as a result of the conversion or merger, the person ceases to be a limited partner." ULPA § 601(b)(10)(B), 6A U.L.A. at 72.

Further, the 2001 ULPA specifically permits the merger of a limited partnership with one or more other constituent entities, and the plan of merger must be consented to by all the partners of a constituent limited partnership. See ULPA §§ 1106(a) and 1107(a), 6A U.L.A. at 110-11. Interestingly, the Comment to § 1107(a) provides in relevant part: "[T]he partnership agreement may state a different quantum of consent or provide a completely different approval mechanism. Varying this subsection's rule means that a partner might be subject to a merger (including a 'squeeze out' merger) without consent and with no appraisal remedy." 6 U.L.A. at 111.

While limited partners may not always be entitled to appraisal rights under the 2001 ULPA, the current version of KRULPA applicable to this case still remains linked to RUPA and does not express an opinion regarding whether appraisal rights exist upon the involuntary dissociation of limited partners following the merger of a limited partnership with an entity other than another limited partnership. Although KRULPA does provide that a withdrawing partner is entitled to the fair value of the partner's interest in the limited partnership as of the date of withdrawal, the absence of any authority concerning the appraisal rights of an involuntarily dissociated partner after a merger requires us to examine the provisions of KUPA pursuant to K.S.A. 56-1a604.

(3) Kansas Uniform Partnership Act (K.S.A. 56a-101 *et seq.*)

As discussed above, the failure of RULPA to provide statutory authority regarding the dissociation and buyout rights of a limited partnership suggests that this court must examine the provisions of the KUPA. The prefatory note to the 1997 enactment of the Uniform Partnership Act (UPA) discussing the interplay between RUPA and RULPA supports this conclusion:

"Partnership law no longer governs limited partnerships pursuant to the provisions of RUPA itself. First, limited partnerships are not 'partnerships' within the RUPA definition. Second, UPA Section 6(2), which provides that the UPA governs limited partnerships in cases not provided for in the [RULPA] has been deleted. *No substantive change in result is intended, however.* Section 1105 of the RULPA already provides that the UPA governs in any case not provided for in RULPA, and thus the express linkage in RUPA is unnecessary. Structurally, it is more appropriately left to RULPA to determine the applicability of RUPA to limited partnerships. It is contemplated that the Conference will review the linkage question carefully, although no changes in RULPA may be necessary despite the many changes in RUPA." Uniform Partnership Act (1997) (RUPA), 6 (Pt. 1) U.L.A. 5, Prefatory Note, p. 6 (2001).

The Kansas Uniform Partnership Act, K.S.A. 56a-101 *et seq.* was enacted in 1998. *Halley v. Barnabe*, 271 Kan. 652, 660, 24 P.3d 140 (2001). KUPA defines a partnership as "an association of two or more persons to carry on as co-owners a business for profit formed under K.S.A. 56a-202, predecessor law, or comparable law of another jurisdiction." K.S.A. 56a-101(f). It defines a limited li-

ability partnership as "a partnership that has filed a statement of qualification under K.S.A. 56a-1001 and does not have a similar statement in effect in any other jurisdiction." K.S.A. 56a-101(e).

The plaintiffs argue that they are dissociated limited partners under both K.S.A. 56a-601(c) and K.S.A. 56a-906(e), and because the dissociation did not result in the dissolution and winding up of the partnership business under K.S.A. 56a-801, they are thus entitled to the statutory buyout rights, attorney fees, the fees and expenses of their appraisers and experts, and other costs as set forth in K.S.A. 56a-701.

(a) K.S.A. 56a-601(c)

The plaintiffs argue they were dissociated from the limited partnership under K.S.A. 56a-601, which sets forth a list of events causing a partner's dissociation. Specifically, the plaintiffs contend they were dissociated because the limited partnership agreement was amended by Via Christi for the specific purpose of squeezing out or expelling the plaintiffs under K.S.A. 56a-601(c), "the partner's expulsion pursuant to the partnership agreement." The defendants counter that "expulsion" is not defined as a "squeeze-out merger" under KUPA, and nothing in the limited partnership agreement or the statute suggests that an expulsion under KUPA took place. The defendants' argument has merit.

The parties do not dispute that prior to any amendments, the original limited partnership agreement did not provide for the expulsion of limited partners. In contrast, it did set forth the procedure for removing the general partner for cause. Although the limited partnership agreement was amended, it merely provided that the general partners shall not take any of the following actions without the prior written consent of the holders of two-thirds of the limited partners' partnership interest, including: "Cause the Partnership to merge with another general or limited partnership, corporation, or limited liability company."

Despite the plaintiffs' insistence otherwise, this amendment relates to the ability of the partnership to merge with another entity and does not address the expulsion of its limited partners. Although this amendment permitted a merger which ultimately resulted in

the plaintiffs having their interests bought out in the surviving partnership, this was merely a side effect of the specific merger authority granted by the amendment to the partnership agreement. As argued by the defendants, the enactment of this amendment would not have permitted the expulsion of any one or more of the limited partners on its own. In the absence of any express expulsion authority in the partnership agreement or argument concerning the existence of other statutory factors for expulsion listed in K.S.A. 56a-601(d) and (e), the plaintiffs have not demonstrated that they were expelled from the partnership under K.S.A. 56a-601 so as to be considered dissociated partners subject to buyout rights under K.S.A. 56a-701.

Our conclusion renders the defendants' argument concerning withdrawal under K.S.A. 56a-601 moot. Nevertheless, we note that their withdrawal argument has no bearing on whether K.S.A. 56a-601 is applicable to this case because, as discussed above, the plaintiffs do not claim to be dissociated by withdrawal under K.S.A. 56a-601(a) nor would they have the right to withdraw under KRULPA, K.S.A. 56-1a353(b).

(b) K.S.A. 56a-906(e)

The plaintiffs next contend that they are dissociated partners under K.S.A. 56a-906(e), regarding the effect of a merger, which provides:

"A partner of a party to a merger who does not become a partner of the surviving partnership or limited partnership is dissociated from the entity, of which that partner was a partner, as of the date the merger takes effect. The surviving entity shall cause the partner's interest in the entity to be purchased under K.S.A. 56a-701 or another statute specifically applicable to that partner's interest with respect to a merger. The surviving entity is bound under K.S.A. 56a-702 by an act of a general partner dissociated under this subsection, and the partner is liable under K.S.A. 56a-703 for transactions entered into by the surviving entity after the merger takes effect."

The RUPA Official Comment to § 906 provides in relevant part:

"Section 906 states the effect of a merger on the partnerships that are parties to the merger and on the individual partners.

. . . .

"Subsection (e) provides for the disassociation of a partner of a party to the merger who does not become a partner in the surviving entity. The surviving entity must buy out that partner's interest in the partnership under Section 701 or other specifically applicable statute. If the state limited partnership act has a dissenter's rights provision providing a different method of determining the amount due a disassociating limited partner, it would apply, rather than Section 701, since the two statutes should be read *in pari materia.*" RUPA § 906, cmt. 6 (Pt. 1) U.L.A. at 227.

The defendants counter that K.S.A. 56a-906 is not applicable to this case for essentially three reasons: (1) K.S.A. 56a-601 sets forth the exclusive list of dissociating events under KUPA; (2) rights under K.S.A. 56a-906(e) are dependent upon claims under K.S.A. 56a-905 which were not raised by the plaintiffs in this case; and (3) K.S.A. 56a-905 only provides for mergers between general partnerships and other general or limited partnerships. These arguments will each be considered in turn.

In arguing that K.S.A. 56a-601 sets forth the exclusive list of dissociating events under KUPA, the defendants rely primarily upon the following relevant portion of the RUPA Official Comment to § 601:

"RUPA dramatically changes the law governing partnership breakups and dissolution. An entirely new concept, 'dissociation,' is used in lieu of the UPA term 'dissolution' to denote the change in the relationship caused by a partner's ceasing to be associated in the carrying on of the business. . . . The entity theory of partnership provides a conceptual basis for continuing the firm itself despite a partner's withdrawal from the firm.

. . . .

"*Section 601 enumerates all of the events that cause a partner's dissociation.* Section 601 is similar in approach to RULPA Section 402, which lists the events resulting in a general partner's withdrawal from a limited partnership." (Emphasis added.) RUPA § 601, cmt. 1, 6 (Pt. 1) U.L.A. at 164.

The plaintiffs argue that despite the language of this Comment, the express language of K.S.A. 56a-906(e) and K.S.A. 56a-601 provides otherwise. They contend K.S.A. 56a-906(e) clearly provides that dissociation occurs in a merger where a partner of a party to the merger does not become a partner of the surviving partnership or limited partnership. Additionally, they point out that the statutory language of K.S.A. 56a-601 does not describe the causes of a

partner's dissociation as "all of the events" or the "only events" so as to be considered the exclusive list of events.

Examination of these provisions of RUPA provides support for both arguments. K.S.A. 56a-601, events causing partner's dissociation, fall under Article 6 of RUPA, which is specifically titled "Partner's Dissociation." 6 (Pt. 1) U.L.A. at 163. In contrast, the dissociation authority the plaintiffs are seeking to apply under K.S.A. 56a-906(e) falls under Article 9 of RUPA, titled "Conversions and Mergers." 6 (Pt. 1) U.L.A. at 213. It makes sense, as set forth by the plain language of Official Comment to § 601, that *all of the events* causing a partner's dissociation under RUPA would be found under Article 6 of RUPA.

While acknowledging the persuasiveness of the defendants' argument, we note that Kansas has not specifically adopted the Official Comment to § 601, and as the plaintiffs point out, the statutory language of K.S.A. 56a-601 does not expressly set forth that these are the exclusive events causing a partner's dissociation. See K.S.A. 56a-601 ("A partner is dissociated from a partnership upon the occurrence of any of the following events."). As dissociation by merger is at least contemplated by K.S.A. 56a-906(e) but not addressed by K.S.A. 56a-601, we will consider whether K.S.A. 56a-906(e) is applicable to the facts of this case.

The defendants argue that the applicability to a case of the effect of merger statute, K.S.A. 56a-906(e), is dependent upon the applicability of the preceding statute, K.S.A. 56a-905, merger of partnerships, which provides: "Pursuant to a plan of merger approved as provided in subsection (c), a partnership may be merged with one or more partnerships or limited partnerships." The statute sets forth what the plan of merger must set forth, how the plan of merger must be approved, the opportunities for amendment and abandonment of the plan, and the effective date of the merger. See K.S.A. 56a-905(a). As this case involves the merger of a limited partnership with a limited liability company and the plaintiffs did not assert any rights under K.S.A. 56a-905, the defendants argue that the plaintiffs' may not claim any dissociation rights under K.S.A. 56a-906(e).

The plaintiffs counter that K.S.A. 56a-906(e) is not, strictly speaking, limited to partnership mergers, but rather the explicit language of the statute deals with "[a] partner of a party to a merger who does not become a partner of the surviving partnership or limited partnership." They continue that irrespective of whether K.S.A. 56a-906(e) is applicable only to mergers involving a partnership and one or more partnerships or limited partnerships, the policy of treating partners who do not become partners of the surviving partnership or limited partnership as dissociated and entitled to the remedies provided under K.S.A. 56a-701 is clearly stated.

In resolving this argument, we apply the following rules of statutory construction:

"The fundamental rule of statutory construction, to which all other rules are subordinate, is that the intent of the legislature governs."

"An appellate court must consider all of the provisions of a statute *in pari materia* rather than in isolation, and these provisions must be reconciled, if possible, to make them consistent and harmonious. As a general rule, statutes should be interpreted to avoid unreasonable results." *State v. Legero*, 278 Kan. 109, Syl. ¶¶ 3, 4, 91 P.3d 1216 (2004).

Application of the above rules support the defendants' position. Although a limited partner could technically be considered a "partner of a party to a merger," the plaintiffs' argument would require this court to take K.S.A. 56a-906(e) out of context in order to establish an independent basis for dissociation. Article 9 of RUPA deals explicitly with conversions and mergers of *partnerships*: K.S.A. 56a-901 defines the terms "general partner," "limited partner," "limited partnership," and "partner"; K.S.A. 56a-902 deals with the conversion of a partnership to a limited partnership; K.S.A. 56a-903 deals with the conversion of a limited partnership to a partnership; and K.S.A. 56a-905 involves the merger of partnerships with one or more partnerships or limited partnerships.

It logically follows that K.S.A. 56a-906, dealing with the effect of merger, would be applicable to the merger of a general partnership with another form of partnership set forth in K.S.A. 56a-905 and not to the merger of a limited partnership with a limited liability company as occurred in this case. This conclusion is further supported by K.S.A. 56a-908, which provides: "This article is not

exclusive. Partnerships or limited partnerships may be converted or merged in any other manner provided by law." As discussed previously, the authority for the merger in this case came exclusively from the Mixed Entity Merger statutes, K.S.A. 2005 Supp. 17-7701(d) and K.S.A. 17-7703. As the plaintiffs *did not* and *could not* argue that the merger in this case occurred under the authority of K.S.A. 56a-905, which deals exclusively with the merger of partnerships, it cannot take advantage of the effect of merger statute, K.S.A. 56a-906(e). As·such, they are not entitled to the buyout rights set forth in K.S.A. 56a-701(b).

Additionally, we acknowledge that even if K.S.A. 56a-906(e) was applicable to mergers between a limited partnership and a limited liability company, it is still questionable whether subsection (e) actually provides an independent basis for dissociation upon a merger. Subsection (e) is more concerned with setting the date of dissociation for calculation of buyout benefits under K.S.A. 56a-701(b) rather than establishing a cause for dissociation. See K.S.A. 56a-906(e) ("A partner of a party to a merger who does not become a partner of the surviving partnership or limited partnership is dissociated from the entity, of which that partner was a partner, as of the date the merger takes effect.").

(4) Conclusion Regarding Statutory Appraisal Rights

In conclusion, the statutory authority for the merger in this case between the limited partnership MR Imaging Center, L.P. and MRI, LLC did not come from KRULPA or KUPA but rather came exclusively from K.S.A. 2005 Supp. 17-7701(d) and K.S.A. 17-7703. Although the Mixed Entity Merger statutory scheme does not explicitly provide for statutory appraisal rights, the doctrine of independent legal significance does not prevent this court from looking outside these statutes because K.S.A. 17-7707(k) preserves any "appraisal shares or their equivalent rights that may otherwise be available to the members or shareholders or other holders of an interest, in any constituent entity."

Although KRULPA contains provisions for the withdrawal of a limited partner, the dissolution and winding up of a limited partnership, and the merger of a domestic limited partnership with or

into one or more limited partnerships, it does not provide for the dissociation of a limited partner, the right of a dissociated partner to a determination of the buyout price of the partner's interest, or the merger of a limited partnership with any type of entity other than another limited partnership. As this scenario is not provided for under KRULPA, "the provisions of the Kansas uniform partnership act (K.S.A. 56a-101 *et seq.*, and amendments thereto) shall govern." K.S.A. 56-1a604.

The plaintiffs in this case are not dissociated partners under K.S.A. 56a-601(c) because they were not expelled from the limited partnership by the amendment to the partnership agreement. Likewise, they were not dissociated partners under K.S.A. 56a-906(e) because that statute is related to mergers between partnerships as provided in K.S.A. 56a-905 when the statutory scheme is viewed as a whole. Thus, the plaintiffs have not established that they were dissociated partners and the district court correctly found that they were not entitled to the statutory buyout rights or to attorney fees, interest associated with a statutory appraisal, or the fees and expenses of their appraisers and experts under K.S.A. 56a-701.

*Breach of Fiduciary Duties*

In granting summary judgment on the plaintiffs' breach of fiduciary duties claims, the district court reasoned that the plaintiffs did not produce evidence to establish a dispute as to a material fact regarding their allegation that Via Christi breached the fiduciary duties contained in K.S.A. 56a-404; that the defendants were entitled to judgment on the plaintiffs' claims regarding fiduciary duty, good faith, and fair dealing because plaintiffs did not produce evidence to establish a dispute as to a material fact regarding specific acts of fraud, misrepresentation, or other items of misconduct; and that the appraiser employed by the defendants to value the plaintiffs' minority interests was independent.

On appeal, the plaintiffs argue that the facts of this case demonstrated both a breach of the fiduciary duty of loyalty as defined in K.S.A. 56a-404(b) and a breach of the duty of good faith and fair dealing contained in K.S.A. 56a-404(d). In the absence of case

law involving freeze-out mergers involving Kansas limited partners, the plaintiffs contend that the defendants' actions were also inconsistent with the fiduciary duties set forth in cases involving corporate cash-out or squeeze-out mergers and suggest that they have met the corresponding burdens of proof under these persuasive cases so as to preclude summary judgment in this case and entitle them to a judicial review of the buyout price of their interests in the limited partnership.

We first note that although the fiduciary duties set forth in K.S.A. 56a-404 are part of KUPA, the parties are correct that they are applicable to this case involving a limited partnership under KRULPA. K.S.A. 56-1a253 provides: "Except as provided in this act or in the partnership agreement, a general partner of a limited partnership has the rights and powers and is subject to the restrictions of a partner in a partnership without limited partners." The limited partnership agreement in this case provided in part that the general partner shall conduct the partnership in accordance with KRULPA, and it acknowledged the general partner's fiduciary duties: "Each General Partner shall indemnify and save harmless the Partnership from any loss or damage incurred by the Partnership by reason of the proven gross negligence, willful misconduct, or breach of fiduciary duty by it."

As KRULPA incorporates the provisions of KUPA in cases not provided for by KRULPA, the fiduciary duties in this case are thus found under K.S.A. 56a-404, general standards of partner's conduct. See K.S.A. 56-1a604 ("In any case not provided for in the Kansas revised limited partnership act, the provisions of the Kansas uniform partnership act [K.S.A. 56a-101 *et seq.*, and amendments thereto] shall govern.").

A. Kansas Corporate Law Cases

Before addressing the plaintiffs' specific arguments under K.S.A. 56a-404, we first address the parties' arguments involving fiduciary duties and burdens of proof set forth in Kansas corporate cases. First, the defendants' argue that Via Christi had a right to amend the limited partnership agreement and proceed with the merger, and that under Kansas common law, the freeze-out merger, in and

of itself, did not constitute a breach of a fiduciary duty. As no Kansas cases have considered whether such a freeze-out merger between a limited partnership and a limited liability company involves a breach of a fiduciary duty, the defendants point to Kansas cases which have approved similar freeze-out mergers in a corporate context.

In *Arnaud v. Stockgrowers State Bank*, 268 Kan. 163, 164, 992 P.2d 216 (1999), this court considered the following certified question: " 'Is it proper for a corporation to determine the "fair value" of a fractional share pursuant to K.S.A. § 17-6405 by applying minority and ·marketability discounts when the fractional share resulted from a reverse stock split intended to eliminate the minority shareholder's interest in the corporation?' " In resolving the issue, we approved the following procedure:

"This court has previously approved the procedure that the defendants have used to force the buy out of the plaintiffs' minority share holdings. See *Achey v. Linn County Bank*, 261 Kan. 669, 931 P.2d 16 (1997) (allowing the corporation to initiate a reverse stock split and force the buy-out of the minority shareholders' stock in order to prevent any fractional share holdings). We did not, however, discuss whether minority or marketability discounts should be applied in determining the 'fair value' that was to be paid to the minority shareholders. [Citation omitted.]" 268 Kan. at 165.

In *In re Hesston Corp.*, 254 Kan. 941, 870 P.2d 17 (1994), following a cash-out merger, the dissenting shareholders argued the corporate board of directors breached its fiduciary duty to them by failing to adequately and carefully consider all factors relevant to an informed decision whether to cash them out. Noting the established rule that a director of a corporation owes a high fiduciary duty to the other stockholders of the corporation, *Hesston* stated in relevant part:

" 'In the context of acquisitions, divestitures, and other reorganizations, both management and majority shareholders owe to the corporation and to the minority shareholders thereof a duty to exercise good faith, care, and diligence to make the property of the corporation produce the largest possible amount, to protect the interest of the holders of minority stock, and to secure and pay over to them their just proportion of the income and of the proceeds of corporate property. These duties have particular emphasis in the context of a "cash-out" or "freeze-

out" merger, which is a merger effected for no valid business purpose and resulting in the elimination of one or more minority shareholders. . . .

" 'In cases of corporate merger, there is no violation of fiduciary duty owed by dominant stockholders to public stockholders if there has been neither fraud, selfdealing nor price manipulation, and alternatives afforded to public shareholders are a fair price fairly determined or a statutory right to appraisal.' " 254 Kan. at 982-83 (quoting 19 Am. Jur. 2d, Corporations § 2566).

Under the facts of *Hesston*, we affirmed the district court's conclusion that no breach of fiduciary duty had occurred despite the corporate board of directors' failure to obtain an independent fairness evaluation regarding the merger agreement, in part because it was offset by the statutory right of appraisal which the minority shareholder's had already pursued. See 254 Kan. at 985, 990-92. Additionally relevant to this case, the district court had noted: " 'It is not necessary for a corporation to show a "valid corporate purpose" for eliminating minority stockholders. The business purpose requirement was eliminated in Delaware in *Weinberger v. UOP*, 457 A.2d 701, 711 (Del. 1983).' " 254 Kan. at 984.

We note that these cases do not establish that a freeze-out merger involving corporations is never a breach of a fiduciary duty. While *Arnaud* and *Achey* approved the freeze-out procedure in the corporate context, they did not consider whether the parties' actions constituted a breach of a fiduciary duty. *Hesston* does suggest that some freeze-out mergers may not breach fiduciary duties when there is no evidence of fraud, self-dealing or price manipulation, and when a fair price is fairly determined or a statutory right to appraisal is available. However, while self-dealing is clearly present in this case, it is important to recognize the distinction under the KUPA statute providing that pursuing one's own self-interest is not *per se* a breach of a fiduciary duty. See K.S.A. 56a-404(e) ("A partner does not violate a duty or obligation under this act or under the partnership agreement merely because the partner's conduct furthers the partner's own interest.").

This self-dealing distinction is also important in light of the numerous corporate cases relied upon by the plaintiffs in this case. A majority of the cases cited establish that Kansas law holds fiduciaries to a strict standard. Thus, plaintiffs argue that based upon

this strict standard, the burden of proof in the circumstances of the case we now consider should have been shifted to the defendants.

Before considering these corporate cases, we first note that reliance upon corporate case law in an attempt to resolve questions arising under a merger between a limited partnership and a limited liability company is not without problems. While there are similarities, before reliance may be had, accommodation must be made for important differences. One important difference noted above involves K.S.A. 56a-404(e), authorizing a partner to pursue his or her own interest. The RUPA Official Comment to § 404 notes that "[a] partner as such is not a trustee and is not held to the same standards as a trustee." RUPA § 404, cmt. 5, 6 (Pt. 1) U.L.A. at 146. The Comment further notes "[t]hat admonition has particular application to the duty of loyalty and the obligation of good faith and fair dealing. It underscores the partner's rights as an owner and principal in the enterprise, which must always be balanced against his [or her] duties and obligations as an agent and fiduciary." RUPA § 404, cmt. 5, 6 (Pt. 1) U.L.A. at 146. In the corporate field, a member of the board of directors is a true trustee subjecting such director in his or her dealing with minority shareholders to the closest scrutiny.

In *Hotchkiss v. Fischer*, 136 Kan. 530, 16 P.2d 531 (1932), this court found that when a director purchased corporate shares from a shareholder, "such transactions must be subjected to the closest scrutiny, and unless conducted with the utmost fairness the wronged shareholder may invoke proper remedy." 136 Kan. at 538. However, it is important to note in this case, the general partner, Via Christi did not purchase the plaintiffs' limited partnership interests. It did, however, have the partnership valued through an appraisal and then paid all the partners including itself the appraised value of their respective interests in the partnership. Thus, each limited partner and the general partner were paid the same amount for each unit of partnership owned at the time of merger.

In *Sampson v. Hunt*, 222 Kan. 268, 564 P.2d 489 (1977), we recognized that a director of a corporation owes a high fiduciary duty to its stockholders and that

" '[w]hen two parties occupy to each other a confidential or fiduciary relation, and a sale is made by one to the other, equity raises a presumption against the validity of the transaction. To sustain it the buyer must show affirmatively that the transaction was conducted in good faith, without pressure or influence on his part, and with express knowledge of the circumstances and entire freedom of action on the part of the seller.' " 222 Kan. at 271 (quoting *Stewart v. Harris*, 69 Kan. 498, Syl. ¶ 2, 77 Pac. 277 ([1904]).

The court concluded that "where knowledge of facts affecting the value or price of stock comes to an officer or director of a corporation by virtue of his office or position, he is under a fiduciary duty to disclose such facts to other stockholders before dealing in company stock with them." 222 Kan. at 272. Again, it must be noted that Via Christi did not purchase the interests of the limited partner plaintiffs. Plaintiffs and defendant Via Christi received the same amount for each unit of partnership owned by them. *Thus, the partnership was dissolved through merger into the limited liability company.*

In *Newton v. Hornblower, Inc.*, 224 Kan. 506, 582 P.2d 1136 (1978), the plaintiff corporate director claimed the defendant corporation, limited partnership, and corporate directors breached their fiduciary duties to the corporation, the limited partnership, and the plaintiff by making unauthorized expenditures of corporate and partnership funds to the benefit of the individual defendants and to the detriment of the corporation, the partnership, and the plaintiff. In setting forth the burden of proof, we stated:

"Any unfair transaction undertaken by one in a fiduciary relationship may result in liability for unjust enrichment of the fiduciary. Where the fairness of a fiduciary transaction is challenged, the burden of proof is upon the fiduciary to prove by clear and satisfactory evidence that such transaction was fair and done in good faith." 224 Kan. 506, Syl. ¶ 9.

In the case we now consider, there is no allegation that unauthorized expenditures were made from the partnership to diminish the value paid to the minority interests.

In *Richards v. Bryan*, 19 Kan. App. 2d 950, 879 P.2d 638 (1994), the minority shareholder in a closely held corporation brought suit against the majority shareholders claiming in part that they breached their fiduciary duty to him by making it appear that the

corporation was unprofitable to avoid payment of additional compensation. The court clarified the burden of proof set forth in *Newton* by pointing to *Cookies Food Products, Inc. v. Lakes Warehouse,* 430 N.W.2d 447 (Iowa 1988), where the plaintiff was required to make out a prima facie case of self-dealing before the burden shifted to the defendant to show the actions were done in good faith. Under the facts of *Richards*, the Court of Appeals found the district court erred in granting summary judgment in favor of the majority shareholders once the plaintiff had established a prima facie showing of breach of duty, effectively requiring the minority shareholder to prove his entire case at the summary judgment stage rather than shifting the burden of proof to the majority shareholders. 19 Kan. App. 2d at 966-67.

We recognize that the K.S.A. 56a-404(e) provisions of RUPA do not authorize a partner to pursue his or her own interests without regard to the partnership and other partners. Professor Edwin W. Hecker, Jr., in discussing 56a-404(e), noted:

"This provision does not state that a partner may always further his or her self-interest with impunity. That would directly contradict, and in fact repeal, the duty of loyalty. Rather, it simply states that 'merely' because certain conduct furthers the partner's own interest is insufficient, in and of itself, to establish a violation of the duty of loyalty. The Official Comments explain that a partner is not a technical trustee and is not held to the same strict standards of self-abnegation as a trustee. Thus, this provision is an attempt to balance the partner's rights as owner and principal in the business with his or her duties and obligations as fiduciary and agent. That balance may be struck by recognizing a partner's right to act in his or her own self-interest as long as the action follows full disclosure and is fair to the partnership and the other partners." Hecker, *The Kansas Revised Uniform Partnership Act,* 68 J.K.B.A. 16, 32 (Oct. 1999).

Review of the corporate self-interest cases cited by the parties in this case suggests that the plaintiffs must establish something above and beyond self-interest or self-dealing in this case involving a limited partnership in order to shift the burden of proof regarding the fairness of the transaction to the defendants. Under *Richards*, this may be accomplished by establishing a prima facie case of a breach of a fiduciary duty under K.S.A. 56a-404. Alternatively, the plaintiff must establish specific acts of fraud, misrepresentation, or

other items of misconduct as set forth in *Weinberger v. UOP, Inc.*, 457 A.2d 701, 703 (Del. 1983). Each will be discussed in turn.

B. Fiduciary Duties of Partners

K.S.A. 56a-404, with the corresponding Official Comments quoted immediately below, provides in relevant part:

"(a) The only fiduciary duties a partner owes to the partnership and the other partners are the duty of loyalty and the duty of care set forth in subsections (b) and (c)." K.S.A. 56a-404(a).

"Section 404 continues the term 'fiduciary' from UPA Section 21, which is entitled 'Partner Accountable as a Fiduciary.' Arguably, the term 'fiduciary' is inappropriate when used to describe the duties of a partner because a partner may legitimately pursue self-interest (see Section 404 [e]) and not solely the interest of the partnership and the other partners, as must a true trustee. Nevertheless, partners have long been characterized as fiduciaries. [Citation omitted.]" RUPA § 404, cmt. 1, 6 (Pt. 1) U.L.A. at 144.

"(b) A partner's duty of loyalty to the partnership and the other partners is limited to the following:

(1) to account to the partnership and hold as trustee for it any property, profit, or benefit derived by the partner in the conduct and winding up of the partnership business or derived from a use by the partner of partnership property, including the appropriation of a partnership opportunity." K.S.A. 56a-404(b)(1).

"Subsection (b)(1) is based on UPA Section 21(1) and continues the rule that partnership property usurped by a partner, including the misappropriation of a partnership opportunity, is held in trust for the partnership. The express reference to the appropriation of a partnership opportunity is new, but merely codifies case law on the point. [Citation omitted.]" RUPA § 404, cmt. 2, 6 (Pt. 1) U.L.A. at 144.

"(2) to refrain from dealing with the partnership in the conduct or winding up of the partnership business as or on behalf of a party having an interest adverse to the partnership." K.S.A. 56a-404(b)(2).

"Subsection (b)(2) provides that a partner must refrain from dealing with the partnership as or on behalf of a party having an interest adverse to the partnership. This rule is derived from Sections 389 and 391 of the Restatement (Second) of Agency. Comment c to Section 389 explains that the rule is not based upon the harm caused to the principal, but upon avoiding a conflict of opposing interests in the mind of an agent whose duty is to act for the benefit of his principal." RUPA § 404, cmt. 2, 6 (Pt. 1) U.L.A. at 144.

"(3) to refrain from competing with the partnership in the conduct of the partnership business before the dissolution of the partnership." K.S.A. 56a-404(b)(3).

. . . .

"(d) A partner shall discharge the duties to the partnership and the other partners under this act or under the partnership agreement and exercise any rights consistently with the obligation of good faith and fair dealing." K.S.A. 56a-404(d).

"The obligation of good faith and fair dealing is a contract concept, imposed on the partners because of the consensual nature of a partnership. See Restatement (Second) of Contracts § 205 (1981). It is not characterized, in RUPA, as a fiduciary duty arising out of the partners' special relationship. . . . It is an ancillary obligation that applies whenever a partner discharges a duty or exercises a right under the partnership agreement or the Act." RUPA § 404, cmt. 4, 6 (Pt. 1) U.L.A. at 145.

"(e) A partner does not violate a duty or obligation under this act or under the partnership agreement merely because the partner's conduct furthers the partner's own interest." K.S.A. 56a-404(e).

"Subsection (e) is new and deals expressly with a very basic issue on which the UPA is silent. A partner as such is not a trustee and is not held to the same standards as a trustee. Subsection (e) makes clear that a partner's conduct is not deemed to be improper merely because it serves the partner's own individual interest.

"That admonition has particular application to the duty of loyalty and the obligation of good faith and fair dealing. It underscores the partner's rights as an owner and principal in the enterprise, which must always be balanced against his duties and obligations as an agent and fiduciary. For example, a partner who, with consent, owns a shopping center may, under subsection (e), legitimately vote against a proposal by the partnership to open a competing shopping center." RUPA § 404, cmt. 5, 6 (Pt. 1) U.L.A. at 146.

Before addressing plaintiffs' arguments, we first note that K.S.A. 56a-404(a) begins by identifying the "only fiduciary duties a partner owes to the partnership and the other partners are the duty of loyalty and the duty of care set forth in subsections (b) and (c)." This provision is somewhat misleading in its use of the term "fiduciary duties." Fiduciary duty is defined as a "duty to act for someone else's benefit, while subordinating one's personal interests to that of the other person," Black's Law Dictionary 625 (6th ed. 1990), while the provisions of subsection (e) expressly provides that a partner does not violate a duty or obligation under KUPA or under the partnership agreement merely because the partner's conduct furthers the partner's "own interest." K.S.A. 56a-404(e). Thus, the use of the term "fiduciary" is inappropriate because a partner may legitimately pursue self-interest instead of solely the interest of the partnership and the other partners as must a true trustee. The contentions of the plaintiffs must be considered in this light.

The plaintiffs contend that the defendants violated the duty of loyalty under K.S.A. 56a-404(b)(1) and (b)(2) by appropriating the benefits of the partnership business for themselves and for others of their choosing in the merger and by dealing with the partnership as or on behalf of a party, namely MRI, LLC, having an adverse interest to the partnership, in violation of K.S.A. 56a-404(b)(2). They contend that the defendants' course of conduct overall falls significantly short of the duties of loyalty and good faith and fair dealing under K.S.A. 56a-404(d).

In support of their contention, the plaintiffs argue that Via Christi secretly planned the merger for a year and created a shell company, MRI, LLC, to effect its own self-interest in replacing the plaintiffs with other investors of its own choosing. Via Christi set up the merger in such a manner that the transaction could be performed without a unanimous vote by the plaintiffs and by denying the plaintiffs a statutory right to a court determination of the buyout price determined by Via Christi's appraiser. As the majority owner of both entities prior to the merger, Via Christi was acting as and on behalf of a party having an adverse interest to both the limited partnership and to the plaintiffs, who obtained no benefit from the merger. In contrast, Via Christi remained the sole general partner and majority limited partner of MR Imaging, L.P., retained all of its arrangements to receive fees for management services and payments for the use of Via Christi facilities, and replaced the plaintiffs with investors of its choosing. As such, the plaintiffs contend the defendants violated their duties of loyalty and good faith and fair dealing.

The defendants respond that Via Christi was well within its rights to amend the partnership agreement and accomplish the merger pursuant to K.S.A. 2005 Supp. 17-7701(d) and additional notice to the plaintiffs would not have altered this fact. They contend that Via Christi did not appropriate the financial returns and benefits of the plaintiffs' interests to itself; rather, its interest in the surviving entity was actually reduced from a 71% owner of the limited partnership to a 64.2% owner of the MRI, LLC. Defendants further note that the independent appraisal performed by Paragon placed the same value on both the plaintiffs' and the defendants' interests.

According to the defendants, the plaintiffs erroneously focus on whether their individual interests were in conflict with or adverse to the defendants, when the statute sets forth specific fiduciary duties to the *partnership* rather than to the *individual partners*. See K.S.A. 56a-404(b)(1), (2), and (3). They argue that no evidence was presented that MRI, LLC, competed with or held any interest adverse to MR Imaging Center, L.P., prior to the merger; that no evidence was presented that the partnership lost anything or was harmed in any way as a result of the merger; and that no evidence was presented that any opportunity of the partnership was misappropriated or that Via Christi's interests were at any time adverse to the partnership.

Our examination of the plaintiffs' contentions begins with the partnership agreement. MR Imaging Center. L.P., was formed by agreement of the plaintiffs and Via Christi on September 17, 1985, with Via Christi owning approximately 71% of the partnership, the plaintiffs with ownership of approximately 14% of the limited partnership, and the remaining 15% owned by parties not involved in the plaintiffs' action. Initially, the agreement did not permit merger on less than a unanimous vote. However, under the terms of the agreement, Via Christi possessed the power, as 71% owner, to modify the merger section as well as other sections of the partnership agreement. This is mentioned to emphasize the consensual nature of the agreement, the parties' understanding that modification through merger was possible, and that a provision against such modification could have been made part of the partnership agreement. Nevertheless, the partnership continued for a period of approximately 18 years until the merger effected by the general partner on July 31, 2003.

With these facts in mind, we conclude that the defendants' argument has merit. First, the fact that Via Christi's actions were motivated by self-interest does not per se establish a breach of a fiduciary duty under K.S.A. 56a-404(d). Second, as discussed above, the terms of the agreement granted Via Christi the majority power to modify the partnership agreement as to the merger provisions as well as other provisions. Under the terms of their agreement and Kansas law, Via Christi had the authority to orchestrate

the merger. As such, disclosure of plans to the plaintiffs would not have affected the transaction in this case, distinguishing this case from *Sampson*, where information regarding the value of the stock may have affected the sale. Finally, by analogy, we have approved freeze-out mergers under certain circumstances in the corporate context in *Arnaud*, *Achey*, and *Hesston*. We conclude that nothing in the process by which Via Christi secured the merger establishes a per se breach of the fiduciary duties of loyalty and good faith and fair dealing.

The plaintiffs also fail to establish how Via Christi has appropriated *partnership* opportunities or benefits to itself and its new partners under Supp. 56a-404(b)(1). It is true that while Via Christi's interest in the limited partnership was bought out, it still retained the majority of its interest in the limited partnership and the plaintiff limited partners were replaced with new limited partners. While this may be considered an appropriation of the profits and opportunities expected to be shared by the plaintiffs as limited partners, no evidence was presented that the limited partnership itself (which was subsequently converted into an LLC) suffered any loss of business or new opportunities by virtue of the merger. Via Christi was conducting business on behalf of and for the benefit of the limited partnership, and while the transaction served Via Christi's self-interest, that is not sufficient to establish a breach of the fiduciary duty of loyalty in the absence of evidence of the misappropriation of a partnership opportunity under K.S.A. 56a-404(b)(1).

Similarly under K.S.A. 56a-404(b)(2), no question exists that the interests of the plaintiff limited partners were adverse to both Via Christi and the new investors of MRI, LLC. However, the defendants rightly point out that the question is whether Via Christi acted as or on behalf of a party with an adverse interest to the *partnership* under this statutory provision. Although Via Christi, as the majority owner of both entities, represented both sides of the transaction, no evidence was presented that Via Christi itself possessed adverse interests to the limited partnership, nor was there evidence that its presence on both sides of the transaction actually harmed the limited partnership in any way. K.S.A. 56a-404(b)(2).

As noted in the Official Comment to § 401(b)(2), this rule "is derived from Sections 389 and 391 of the Restatement (Second) of Agency. Comment c to Section 389 explains that the rule is not based upon the harm caused to the principal, but upon avoiding a conflict of opposing interests in the mind of an agent whose duty is to act for the benefit of his principal." RUPA § 404, cmt. 2, 6 (Pt. 1) U.L.A. at 144.

Moreover, the simple fact that MRI, LLC was merging with the limited partnership does not per se establish that its interests were adverse in the absence of any evidence of adversity. MRI, LLC was only in existence for 2 weeks before it was merged into the limited partnership. The plaintiffs offered no evidence that MRI, LLC was in competition with the limited partnership or was appropriating business from the limited partnership during that time. As the plaintiffs did not establish that Via Christi was acting as or on behalf of an adverse party or that its actions harmed the partnership, the district court properly concluded that the plaintiffs had not established a breach of its fiduciary duty of loyalty under K.S.A. 56a-404(b)(2).

C. Fraud, Misrepresentation, or Misconduct under *Weinberger v. UOP, Inc.*, 457 A.2d 701 (Del. 1983)

In addition to examining the fiduciary duties set forth in K.S.A. 56a-404, the district court in this case also applied the threshold set forth in a Delaware corporate merger case. In *Weinberger v. UOP, Inc.*, 457 A.2d 701 (Del. 1983), minority shareholders in a subsidiary corporation challenged the cash-out merger by the corporate majority shareholder of the subsidiary. The majority shareholder corporation had established the buyout price without disclosing a feasibility study to the subsidiary indicating that a price in excess of what the corporation ultimately offered for the subsidiary's outstanding shares would have been a good investment for the corporation. In first discussing the burden of proof, the Supreme Court of Delaware found that a plaintiff "challenging a cash-out merger must allege specific acts of fraud, misrepresentation, or other items of misconduct to demonstrate the unfairness of the merger terms to the minority." 457 A.2d at 703. The court explained:

"[E]ven though the ultimate burden of proof is on the majority shareholder to show by a preponderance of the evidence that the transaction is fair, it is first the burden of the plaintiff attacking the merger to demonstrate some basis for invoking the fairness obligation. . . . However, where corporate action has been approved by an informed vote of a majority of the minority shareholders, we conclude that the burden entirely shifts to the plaintiff to show that the transaction was unfair to the minority. [Citation omitted.] But in all this, the burden clearly remains on those relying on the vote to show that they completely disclosed all material facts relevant to the transaction." 457 A.2d at 703.

The court also noted that "[w]hen directors of a Delaware corporation are on both sides of a transaction, they are required to demonstrate their utmost good faith and the most scrupulous inherent fairness of the bargain [citation omitted]" and that "[t]he requirement of fairness is unflinching in its demand that where one stands on both sides of a transaction, he has the burden of establishing its entire fairness, sufficient to pass the test of careful scrutiny by the courts. [Citations omitted.]" 457 A.2d at 710. The court found the concept of fairness has two basic aspects: fair dealing and fair price. Fair dealing questions when the transaction was timed, how it was initiated, structured, negotiated, disclosed to the directors, and how the approvals of the directors and the stockholders were obtained. Fair price relates to the economic and financial considerations of the proposed merger. 457 A.2d at 711. Under the facts of *Weinberger*, the court concluded that the transaction did not satisfy the concept of fair dealing amounting to a breach of fiduciary duty and remanded for consideration of the fair value of the shares. 457 A.2d at 703, 712, 714.

While *Weinberger* is clearly not binding on this court, it is important to recognize that this court has recognized Delaware's "entire fairness" test concerning fair dealing and fair price under circumstances when a corporate board of directors' actions in a perceived threat of hostile takeover were not subject to the business judgment rule. See *Burcham v. Unisom Bancorp. Inc.*, 276 Kan. 393, 421, 77 P.3d 130 (2003). Additionally, "Kansas courts have a long history . . . of looking to the decisions of the Delaware courts involving corporation law, as the Kansas Corporation Code was modeled after the Delaware Code." *Arnaud v. Stockholders State Bank*, 268 Kan. 163, 165, 922 P.2d 216 (1999).

The plaintiffs point to the application of *Weinberger* in *Casey v. Brennan*, 344 N.J. Super. 83, 780 A.2d 553 (2001), *aff'd on other grounds* 173 N.J. 177, 801 A.2d 245 (2002), where minority shareholders brought breach of fiduciary duty action against a bank's board of directors, which also consisted of its majority shareholders, seeking the fair value for their shares following a merger. The court found that even those shareholders who did not qualify as statutory dissenters still had the right to claim fair compensation for their shares in the context of a cash-out merger, as an incident of the fiduciary duty of the majority to treat the minority fairly. The court utilized the fair price and fair dealing standard from *Weinberger*, reasoning in relevant part:

"[W]here, as here, a shareholder claim of unfairness involves a corporate transaction in which the directors stand to realize a personal benefit by continuing as shareholders after paying the minority an unfairly low price, we have no hesitancy in concluding that the fiduciary responsibilities of the directors and of the corporation toward all shareholders impose upon them the burden of proving the transaction was not 'unfair and inequitable' to plaintiffs. [Citation omitted.]" 344 N.J. Super. at 108.

In this case, the defendants argue that the plaintiffs have made no specific allegations of fraud, misrepresentation, or other items of misconduct so as to invoke a judicial inquiry into the fairness of the transaction. The plaintiffs contend that they established a prima facie case of self-dealing, unfairness, and breach of fiduciary duty on the part of the defendants and the defendants should therefore be held to the burden of proving the entire fairness of the transaction despite the absence of statutory appraisal rights.

Aside from the fiduciary duties discussed above, the plaintiffs articulated at the summary judgment hearing that the fraud and misrepresentation took the form of intentionally concealing the business plan Via Christi was developing, selecting a process to exchange the plaintiffs' interests with those of other limited partners without providing statutory appraisal rights, and manipulating the valuation of the allegedly independent expert as to the valuation of the company.

As discussed above, Via Christi's actions in planning the merger were in accord with the limited partnership agreement and the

applicable Mixed Entity Merger statutes, which do not provide for statutory appraisal rights. These actions were not in and of themselves fraudulent, nor did the actions constitute a breach of a fiduciary duty. Rather, the key issue to be determined in this analysis is whether the plaintiffs have established any fraud, misrepresentation, or misconduct in Via Christi's involvement in the valuation of the limited partnership during the appraisal by its appraiser of choice, Paragon.

In their brief on appeal, the plaintiffs argue that the appraisal was prepared by an appraiser selected by Via Christi at the direction of Via Christi and was not given to the plaintiffs for comment or criticism prior to the merger. However, according to the defendants, Paragon was chosen because of its expertise in the valuation of the transaction contemplated. The plaintiffs do not point to any specific evidence below to support a conclusion that Via Christi by its selection of Paragon for the appraisal engaged in any misconduct or manipulated the value of the limited partnership through manipulation of Paragon. The record supports the opposite conclusion.

Although plaintiffs' appraisal valued the limited partnership nearly $5,000,000 more than the Paragon appraisal, *Weinberger* counsels that inquiry into the fairness of the price does not happen unless plaintiffs can establish fraud, misconduct, or misrepresentation. At the summary judgment hearing, the plaintiffs argued that Via Christi's involvement with the appraisal process in suggesting why different aspects of Paragon's assumptions were incorrect and needed to be changed demonstrated an interference in the appraisal process beyond providing data in an effort to achieve a "friendly price" for the incoming limited partners. However, when asked if the suggestions offered by Via Christi representatives were adopted by the appraiser without regard to the truth, plaintiffs' counsel responded:

"I'm not able to tell you whether the net impact was to increase or decrease the overall valuation. There were modifications in the figures in a way that I'm unable to express to the Court whether the impact was to increase, decrease or remain neutral with regard to the price being paid to the limited partnership interest holders. The aspect that we are critical of is the—is both the process in

which the fiduciary clearly participated and comparing that to the other objective evidence regarding what a valuation would be."

The defendants point out that discovery on the communications between Via Christi and the appraiser showed no evidence that Via Christi acted in anything other than an above-board manner, even going to the expense of retaining attorneys to convince Paragon not to reduce the value of the limited partnerships for minority and marketability discounts. Indeed, a review of the conclusions of Paragon's Confidential Valuation Letter Report provides:

"Based on the results for the methods that appear most applicable to the Partnership's current status and potential, primarily the Discounted Cash Flow method, Paragon believes that the Fair Market Value for a 100% equity interest in Partnership would be $6,700,000 assuming a 32.6% lack of marketability discount.

"However based upon VCHP's [Via Christi's] direction, and representations of its legal counsel's opinion, our analysis indicates, that a *Fair Value* for a 100% equity interest in the Partnership would be $9,900,000."

Thus, while the evidence established Via Christi may have influenced the appraisal process in some manner, it is clear that this influence resulting in an increase of $3.2 million in the valuation of the limited partnership, which was in the best interest of the limited partners as well as the general partner. It is also important to recognize that the limited partner plaintiffs and the general partner, in the absence of discovery from Paragon, stipulated that Paragon would testify that its valuation was independent. Based upon this stipulation, the district court concluded that Paragon was in fact independent in its valuation of the limited partnership. The limited partner plaintiffs received the same value for their interests in the limited partnership as did the general partner, Via Christi. The limited partner plaintiffs have not established that Via Christi engaged in fraud, misrepresentation, or misconduct during the appraisal process sufficient to warrant a review of the fairness of the transaction under *Weinberger*.

D. Conclusion

The plaintiffs have not established a prima facie case of a breach of the fiduciary duties of loyalty and good faith and fair dealing under K.S.A. 56a-404(b)(1), (b)(2), and (d) or specific acts of fraud,

misrepresentation, or misconduct sufficient to shift the burden of proof to the defendants to establish the fairness of the transaction. In the absence of any such evidence, there remained no material dispute regarding the plaintiffs' claims of breach of fiduciary duty, good faith, and fair dealing or any material dispute regarding claims of specific acts of fraud, misrepresentation, or other items of misconduct. Finally, based upon the plaintiffs' stipulation that Paragon would testify that it was independent in its evaluation of the limited partnership, together with the actions of defendants' counsel regarding the increased valuation of the limited partnership, the case was ripe for summary judgment. We affirm the district court's determination as a matter of law that the defendants be granted summary judgment on the plaintiffs' claims.

Affirmed.

LOCKETT, J., Retired, assigned.