(816 P.2d 399)

No. 66,069

Marianna V. Temple, *Appellee*, v. White Lakes Plaza
Associates, Ltd., and Fritz Duda, *Appellants*.

Opinion
filed August 2, 1991.

*Thomas D. Haney*, of Porter, Fairchild, Wachter & Haney, P.A., of
Topeka, for appellants.

*Charles T. Engel* and *Lori A. Fink*, of Cosgrove, Webb & Oman, of
Topeka, for appellee.

Before Elliott, P.J., Larson and Rulon, JJ.

Rulon, J.: White Lakes Plaza Associates, Ltd., (White Lakes),
defendant, appeals a district court judgment ordering that Mar-
ianna V. Temple, plaintiff, be made a limited partner in that
partnership. We affirm in part and reverse in part.

The important facts are as follows:

On February 1, 1977, John Temple became a limited partner
in White Lakes, a Kansas limited partnership formed for the

purpose of operating the White Lakes Plaza apartment complex in Topeka, Kansas. The 1977 limited partnership agreement was a reorganization of a limited partnership organized in 1973. John's interest in the partnership's net income and losses was 5%. His wife Marianna signed the partnership agreement, consenting to its terms.

The partnership agreement gives the limited partners no authority to act for or bind the partnership. The agreement further provides that all limited partners and the general partner must consent to (1) a termination of the partnership other than in accordance with the agreement; (2) amendment of the agreement; and (3) sale of all or substantially all of the partnership's assets.

The certificate of limited partnership contains the following provision:

"A Limited Partner may sell, assign or transfer his limited partnership interest; however, any such purchaser shall only be entitled to be admitted as a Substituted Limited Partner if the Assignor so designates his intention in the instrument of assignment, and the General Partner consents thereto, the denial or granting of which shall be at the sole discretion of the General Partner. The General Partner does not have the right to admit additional Limited Partners without the consent of the Limited Partners."

The agreement also contains the following provision regarding transfer of partnership interests:

"13. RESTRICTIONS ON TRANSFER OF
PARTNERSHIP INTERESTS.

"A. Transfers by General Partner. The General Partner shall not sell, transfer or assign his entire interest as a General Partner in the Partnership, except to a corporation controlled by such General Partner and to members of his immediate family, without the consent of all of the Partners holding seventy-five percent (75%) in interest of the Partnership, unless such sale is to one or more then existing General Partner. No consent is required for a sale, transfer or assignment of a portion of the General Partner's interest or [sic] to a corporation controlled by the General Partner and to members of his immediate family.

"B. Transfers by a Limited Partner. A Limited Partner shall be entitled to sell, assign, transfer, or convey all or a portion of the interest owned by him ('Assignor'), and such purchaser ('Assignee') shall be entitled to be admitted to the Partnership as a 'Substituted Limited Partner' only upon the performance or occurrence of each of the following events:

"(1) The Assignor shall send a written notice to the General Partner setting forth the name and address of the proposed Assignee, the percentage interest being transferred and the date such transfer is to become effective (which

must be on the last day of the calendar month during which the transfer becomes effective) together with a check made payable to the Partnership in an amount specified by the General Partner to cover or apply to the costs described in Subparagraph (6) hereof;

"(2) The Assignee shall have furnished to the General Partner, on a form approved by the General Partner, such information concerning the Assignee's residence, financial capabilities and investment experience as may be requested by the General Partner;

"(3) The General Partner shall approve of the form and content of the instrument of assignment;

"(4) The Assignor and the Assignee or Assignees executing and acknowledging such other instrument or instruments as the General Partner may deem necessary or desirable to effectuate such admission;

"(5) The written acceptance and adoption by the Assignee or Assignees of all of the terms and provisions of this Agreement, as the same may have been amended;

"(6) The Assignor paying or obligating himself to pay, as the General Partner may determine, all reasonable expenses incurred in connection with such admission, including, but not limited to, legal fees and costs (which costs may include, for example, the cost of filing an amendment of the Certificate of Limited Partnership);

"(7) The filing with the Partnership, if required by the General Partner, of such proof of the age of the Assignee as the General Partner may deem necessary. In no event shall a limited partnership interest, or any portion thereof, be assigned or transferred to a minor or incompetent. Any such attempted assignment or transfer shall be null, void and ineffectual;

"(8) The Assignor shall have evidenced an intent in the instrument of assignment that the Assignee be admitted to the Partnership as a Substituted Limited Partner;

"(9) The General Partner shall have consented in writing to the admission of the Assignee as a Substituted Limited Partner, the granting or denial of which shall be within the sole and absolute discretion of the General Partner, except that should the Assignee be a trust of which the Assignor is the sole or controlling trustee, and the beneficiaries are members of the Assignor's immediate family, the General Partner shall consent to such admission;

"(10) The Assignor shall have furnished the Partnership and the General Partner with an opinion of counsel, in form and content satisfactory to the General Partner, that such transfer is exempt from registration under the Federal Securities Act of 1933.

"C. Restrictions on Assignees. An Assignee of an interest in this Partnership who does not become a Substituted Limited Partner, has no right to require any information or account of the partnership transactions, to inspect the partnership books or to vote on any of the matters as to which a Limited Partner would be entitled to vote under this Agreement. An Assignee shall only be entitled to receive the share of the profits or other

compensation by way of income, or the return of his contributions, to which his Assignor would otherwise be entitled."

According to subparagraph B(9), the general partner may within his sole and absolute discretion deny admission of an assignee as a substituted limited partner, even if the assignor and assignee have fulfilled the requirements of subparagraphs B(1) through B(8). Paragraph C provides, however, that the assignee is still entitled to the share of profits or the return of contributions to which the assignor would be entitled. This restriction on a limited partner's transfer of his or her interest also appears in the certificate of limited partnership.

On January 23, 1986, a decree was filed by a Florida court dissolving the marriage of John and Marianna. As part of the property settlement, the Florida court awarded Marianna "100% of the interest of [John] in the . . . limited partnership[] known as . . . White Lakes Plaza." Marianna was to assume "full financial responsibility" for the partnership interest as of December 17, 1985. The Florida court then ordered that John, "on or before midnight, January 16, 1986, transfer to [Marianna], by such appropriate documents as is required, one hundred percent of his interest in" White Lakes Plaza Associates, Ltd. "All of the income . . . and all of the expenses related thereto shall be owned by and shall be the responsibility of [Marianna] from and after December 17, 1985."

In late January 1986, John executed an assignment of his partnership interest to Marianna. The assignment provided that John intended Marianna to become a substituted limited partner. Marianna, however, never signed the assignment.

In a letter to general partner Fritz Duda, John acknowledged that Duda had told him the partnership interest transfer would not be allowed "because of the uniqueness of this partnership and particularly the unanimous vote of the limited partners needed for ultimate sale." John also acknowledged that he and his attorney had suggested a substitution of assets to the Florida court, but that Marianna's attorney had rejected the offer. He then concluded the letter by asking for Duda's reconsideration of the matter.

Duda's reply to John contained the following explanation of his refusal to approve Marianna as a substituted limited partner:

"I have discussed your request with our counsel and two of the limited partners. As you know, this partnership was initiated and established by a small group of real estate professionals. Many years ago, by virtue of the divorce of one of the partners, we were confronted by untold problems associated with the partner's spouse and her counsel. Moreover, our partnership document requires 100% approval of certain matters by the limited partners. As general partner, we have assumed substantial liability over the years and have a duty to the remaining limited partners to exercise sound judgment in the admission of a new or different partner. Because of the fact that this [is] a small and somewhat unique professional group, I do not believe it is in the interest of the partnership to admit a spouse as a substituted limited partner and will decline to do so."

After further correspondence among Marianna, John, and Duda, Marianna ultimately filed suit in Shawnee District Court. She alleged that due to the refusal of Duda and the partnership to recognize and effectuate John's assignment of his interest to her, she suffered injustice and economic injury and loss. Marianna additionally alleged that Duda's actions, as unauthorized interference with her ownership interest in the partnership, were conversion. She requested as relief an accounting of all money transferred from the partnership to John from December 17, 1985, to the present; an order compelling Duda as general partner to approve and effectuate the court-ordered assignment of John's partnership interest; damages of not less than $10,000 against Duda for conversion; and attorney fees and costs.

During the bench trial, Marianna testified that she wished to become a limited partner in White Lakes for advantageous treatment under the tax laws. She stated the partnership was a passive income generator that she could use to offset passive losses. On cross-examination, Marianna agreed she never signed an assignment of John's interest and that she did sign and consent to the amended partnership agreement.

John testified that he attempted to obtain Marianna's signature on the assignment, but he received no response when attempting to contact her. He further testified it was his understanding the Florida court did not have a copy of the limited partnership agreement during the divorce proceeding.

During his testimony, Duda affirmed the reasons given in his correspondence with John for not approving Marianna as a substituted limited partner. Additionally, he testified that from her

behavior in the divorce proceeding, her filing of the instant litigation, and his discussions with John, he believed Marianna "would be litigious, would be conceivably an obstructionist." Duda further testified Marianna had not supplied all information required under section 13 of the partnership agreement for a transfer of interest, nor had he requested it; however, even if section 13 were complied with, he still would not approve her as a substituted limited partner. Duda said all distributions or earnings on John's 5% interest in the partnership were being held in an interest-bearing account pending resolution of litigation.

The district court essentially balanced honoring the Florida property award under full faith and credit against preservation of the integrity of a Kansas limited partnership, and found "no overwhelming legitimate reason exists" not to give the property award full faith and credit. The district court specifically stated "[t]he limited partnership will suffer no irreparable harm by reason of admission of Marianna Temple as an investor" and ordered Marianna be made a substituted limited partner without having "to comply with the specific requirements of the limited partnership agreement and the Kansas Limited Partnership Act." Additionally, the district court ordered all funds held in escrow paid to Marianna and all costs to be assessed against the defendants.

Before us, White Lakes argues that the partnership certificate and agreement, as permitted by Kansas statute, place restrictions on the admission of substituted limited partners. Consistent with his power granted by the partnership agreement, Duda as general partner denied Marianna admission as a substituted limited partner, properly exercising his discretion. White Lakes further contends that in ordering Marianna to be given partner status, the district court improperly substituted its discretion for that of general partner Duda.

Marianna essentially argues the restrictions on partnership admission in the partnership agreement are not applicable to involuntary transfers of partnership interests. She cites cases where courts have held restrictions on corporate stock transfer are inapplicable to involuntary transfers.

In resolving this issue, the applicable statutory framework for our review is the Kansas Revised Uniform Limited Partnership Act (RULPA), K.S.A. 56-1a101 *et seq.* Although White Lakes was

formed when the Kansas Uniform Limited Partnership Act, K.S.A. 56-122 *et seq.*, was in effect, all Kansas limited partnerships have been governed by RULPA since January 1, 1986. K.S.A. 56-1a603(b).

RULPA permits the assignment of a partnership interest as follows:

"**Assignment of partnership interest.** Unless otherwise provided in the partnership agreement, a partnership interest is assignable in whole or in part. An assignment of a partnership interest does not dissolve a limited partnership or entitle the assignee to become or to exercise any rights of a partner. An assignment entitles the assignee to share in such profits and losses, to receive such distribution or distributions, and to receive such allocation of income, gain, loss, deduction or credit or similar item to which the assignor was entitled, to the extent assigned. A partner ceases to be a partner upon assignment of all the partner's partnership interest." K.S.A. 1990 Supp. 56-1a402.

We note under the above statute that the assignee does not become a partner by virtue of the assignment, but only acquires the right to receive the assignor's share of profits, losses, distributions, income, gain, loss, deduction, or credit.

An assignee, however, may become a limited partner under the provisions of K.S.A. 56-1a404, which provides:

"(a) An assignee of a partnership interest, including an assignee of a general partner, may become a limited partner if and to the extent that:

(1) The assignor gives the assignee that right in accordance with authority described in the certificate of limited partnership; or

(2) all other partners consent.

(b) An assignee who has become a limited partner has, to the extent assigned, the rights and powers and is subject to the restrictions and liabilities of a limited partner under the partnership agreement and this act. An assignee who becomes a limited partner also is liable for the obligations of the assignor to make and return contributions as provided in K.S.A. 56-1a301 through 56-1a304 and 56-1a351 through 56-1a358. However, the assignee is not obligated for liabilities unknown to the assignee at the time the assignee became a limited partner and which could not be ascertained from the certificate of limited partnership or the partnership agreement.

(c) If an assignee of a partnership interest becomes a limited partner, the assignor is not released from the assignor's liability to the limited partnership under K.S.A. 56-1a157 and 56-1a302."

K.S.A. 1990 Supp. 56-1a201 provides:

"**Admission of additional limited partners.** (a) A person becomes a limited partner:

(1) At the time the limited partnership is formed; or

(2) at any later time specified in the records of the limited partnership for becoming a limited partner.

(b) After the filing of a limited partnership's initial certificate of limited partnership, a person may be admitted as an additional limited partner.

(1) In the case of a person acquiring a partnership interest directly from the limited partnership, upon compliance with the partnership agreement or, if the partnership agreement does not so provide, upon the written consent of all partners; and

(2) in the case of an assignee of a partnership interest of a partner who has the power, as provided in K.S.A. 56-1a404 and amendments thereto, to grant the assignee the right to become a limited partner, upon the exercise of that power and compliance with any conditions limiting the grant or exercise of the power."

Both of the above statutes provide that an assignor may make the assignee a limited partner only if the assignor is given that power in the certificate of limited partnership.

After reviewing White Lakes' certificate of limited partnership, it is clear to us that while a limited partner may sell, assign, or transfer his or her interest, the limited partner alone is not empowered to admit the assignee as a substituted limited partner. While the assignor must designate his or her intention that the asignee become a substituted limited partner, the consent of the general partner is also necessary. This consent is placed within the sole discretion of the general partner.

RULPA does not prohibit the grant of such authority to a general partner. See K.S.A. 56-1a253(a).

Marianna argues that the above RULPA provisions allowing for restrictions on the admission of substituted limited partners should not be applied to a partner's involuntary assignment of his or her interest, such as that ordered by a divorce decree. Any such ruling, however, would be contrary to principles developed in general partnership law. The Uniform Partnership Act and case law developed thereunder have been applied to limited partnerships. 59A Am. Jur. 2d, Partnerships § 1235. Additionally, RULPA itself provides that for cases not covered by its provisions, the Kansas Uniform Partnership Act (UPA), K.S.A. 56-301 *et seq.*, should be applied. K.S.A. 56-1a604.

A distinguishing feature of a partnership is the rule of *delectus personae* or choice of the person. A partnership is based on the intent of all parties involved. 2 Bromberg and Ribstein on Part-

nership § 6.03(d) (1988). Expressed another way, "partners should be able to choose their associates." 1 Bromberg and Ribstein on Partnership § 3.05(c)(4) (1988).

The Uniform Partnership Act recognizes the principle of *delectus personae* by distinguishing a partner's interest in the partnership and a partner's right to participate in management. See K.S.A. 56-324. A partner's interest in the partnership is his or her share of the profits and surplus, K.S.A. 56-326. In a limited partnership, the partner's interest·is a share of the profits and losses and the right to receive distributions of partnership assets. K.S.A. 1990 Supp. 56-1a101(j). Under the specific terms of the limited partnership agreement in this case, the assignee of a partner's interest in the partnership is not entitled to participate in the management of the partnership or to obtain information about the partnership or its books, but is entitled only to the profits to which the assignor would be entitled. See K.S.A. 56-327(a); K.S.A. 1990 Supp. 56-1a402. "The assignee is plainly not a partner." 1 Bromberg and Ribstein on Partnership § 3.05(c)(3) (1988).

To support her argument, Marianna cites cases where courts have held that restrictions on transfer of corporate stock apply only to voluntary transfers: *Vogel v. Melish,* 31 Ill. 2d 620, 203 N.E.2d 411 (1964); *Castonguay v. Castonguay,* 306 N.W.2d 143 (Minn. 1981); *Witte v. Beverly Lakes Inv. Co.,* 715 S.W.2d 286 (Mo. App. 1986). The basis of these holdings is the rule of strict construction of restrictions on corporate stock transfers; if the restriction is not expressly applicable to transfers by operation of law or which are otherwise involuntary a court will not interpret it as applicable. *Vogel,* 31 Ill. 2d at 625, *Castonguay,* 306 N.W.2d at 146; *Witte,* 715 S.W.2d at 292. The two cases Marianna cites where the courts held transfers of corporate stock pursuant to a divorce decree valid despite restriction upon transfer appear to be based on community property principles: *Messersmith v. Messersmith,* 229 La. 495, 86 So. 2d 169 (1956), and *Earthman's Inc. v. Earthman,* 526 S.W.2d 192 (Tex. Civ. App. 1975). The court in *Messersmith* stated that the husband and wife each acquired a half interest in the stock which vested immediately upon its acquisition. 229 La. at 507-09. The court in *Earthman's* cited and quoted *Messersmith.* 526 S.W.2d at 202.

Corporate law has been applied to limited partnerships. 59A Am. Jur. 2d, Partnership § 1236. However, application of the above cases dealing with transfers of corporate stock to allow the assignee of a limited partnership interest under a divorce decree to become a substituted limited partner would unfavorably affect the distinctive nature of the partnership form of business association. The remaining partners in the limited partnership should not have an individual forced on them as a partner. Furthermore, the ability of a limited partner in White Lakes to transfer or assign his or her interest is not being contested by the partnership. Only the right of Marianna, an assignee, to become a limited partner merely by virtue of the assignment is being challenged.

We agree the nature of a limited partner's role in the management of the partnership's business differs from that of a general partner in either a general or limited partnership. However, in the instant case, White Lakes is composed of a comparatively small group of limited partners who, along with the general partner, are experienced in the business of the partnership—real estate investment and management. Under the partnership agreement, each limited partner has the authority to veto a decision "affecting the basic structure of the [p]artnership": termination, amendment of the agreement, and sale of assets. It would be contrary to the principles of partnership law to require White Lakes to accept as a substituted limited partner someone who has been rejected under the partnership agreement's provisions for becoming a substituted limited partner. We believe Marianna is an assignee of John's interest and therefore has the rights due an assignee under the agreement, but she cannot be made a substituted limited partner outside of the agreement or in contravention of RULPA.

Consistent with RULPA, the partnership agreement, and the divorce decree, John could and did transfer his share of profits and losses and the right to receive distributions. As an assignee, Marianna is also entitled to receive such allocation of income, gain, loss, deduction, or credit to which John was entitled. John, having transferred all his interest, ceased to be a partner. K.S.A. 1990 Supp. 56-1a402.

Finally, Marianna discusses two cases which she claims support her admission as a substituted limited partner: *Jones v. Way*, 78

Kan. 535, 97 Pac. 437 (1908), and *Burnet v. Leininger*, 285 U.S. 136, 76 L. Ed. 665, 52 S. Ct. 345 (1932). Neither is persuasive. While the *Jones* court held that the partners owned purported partnership realty as tenants in common and therefore one partner could transfer his interest in the realty without the consent of the other partners, it specifically found the partnership did not conduct any business. 78 Kan. at 537. White Lakes, in contrast, is actively conducting the business for which it was formed. In *Leininger*, the United States Supreme Court was concerned with whether a wife was validly made a partner in a partnership of which her husband was a member when he transferred half of his interest to her for favorable treatment under the tax laws. 285 U.S. at 138-39. The Court found she was not. 285 U.S. at 140-41. *Leininger* does not concern the issue presented in the instant case.

We conclude Marianna is an assignee of John's interest, but not a substituted limited partner in White Lakes Plaza Associates, Ltd.

We affirm that portion of the district court judgment which awarded Marianna the earnings from the assigned partnership interest being held in escrow, but reverse the portion of the judgment making Marianna a substituted limited partner in the partnership.