COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-06-061-CV

 

 

GREGORY A. BIRD AND                                                     APPELLANTS

MICHAEL G. RADLER                                                                           

 

                                                   V.

 

LUBRICANTS, USA, LP.,                                                        APPELLEES

LUBRICANTS
MANAGEMENT GROUP, LP., 

APL
MANAGEMENT, LLC., 

CHRIS
HAIRE, AND 

ROBERT
BLAKE SHAW

                                              ------------

 

            FROM
THE 17TH DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------

                                          I.  Introduction








Gregory A. Bird and Michael
G. Radler (collectively, appellants) appeal the trial court=s judgment dismissing appellants= claims against Lubricants USA, LP., Lubricants Management Group, LP.,
APL Management, LLC., Chris Haire, and Robert Blake Shaw (collectively,
appellees) for lack of standing.  In
three issues, appellants complain that the trial court erred by granting the
plea to the jurisdiction based on lack of standing.  We reverse and render.

                       II. 
Background Facts and Procedural History

Lubricants USA, LP. (LUSA) is
a Texas limited partnership that owns and operates a lubricant business.  LUSA was created by an Agreement of Limited
Partnership (the Partnership Agreement) executed in August 2000.  LUSA=s general partner is APL Management, LLC. (APL), a Texas limited
liability company.  LUSA=s limited partners are composed of two groups: the Management Group
and the Investor Group.  The Management
Group initially represented the limited partnership interest owned by
Lubricants Management Group, LLC., a Texas limited liability company whose
members were Haire and Shaw.  The
investor group was comprised of limited partners Milt McKenzie, Michael Allen,
and JPC, LLC.  JPC is an Oklahoma limited
liability company owned by appellants.








In conjunction with the
execution of the Partnership Agreement, the parties also entered into a Voting
Agreement concerning the election of managers of APL, LUSA=s general partner.  Under the
Voting Agreement, the Management Group was entitled to elect two persons to act
as managers for APL, and the Investor Group was entitled to elect one person to
act as a manager of APL.  The Voting
Agreement also allowed the Investor Group to call a special meeting and select
an additional manager if LUSA failed to generate positive cash flow for any
period of four consecutive months. 

In the fall of 2003, McKenzie
and Allen sold their limited partnership interests back to LUSA.  After LUSA bought back McKenzie=s and Allen=s limited
partnership interests, Haire and Shaw proposed changes to the Partnership
Agreement.  Appellants considered the
proposed changes to be substantial in nature and adverse to their interests and
did not consent to them. 

LUSA also wanted to buy out
the remaining Investor Group limited partnership interests held by appellants
through JPC; however, appellants decided to retain their interests.  On December 17, 2003, JPC assigned one-half
of its limited partnership interest in LUSA to Bird and one-half to Radler,
effective January 1, 2003.  On February
2, 2004, JPC also assigned one-half of its membership interest in APL to Bird
and one-half to Radler.








On or about March 2, 2004, at
Haire=s request, appellants each signed Assumption Agreements regarding the
interests obtained from JPC and became substitute limited partners of LUSA and
substitute members of APL.  Like the
assignments from JPC, the Assumption Agreements were dated to be effective
January 1, 2003.  After these changes,
JPC retained no right, title, or interest in LUSA or APL; thus, appellees were
the only limited partners comprising the Investor Group.  Further, as provided by the Partnership
Agreement, first Radler, and later Bird, served as the Investor Group=s designated manager of APL.

Meanwhile, in December 2003,
Bird and his wife created the Gregory A. and Laura E. Bird Foundation, and
Radler created the Radler Family Foundation. 
On December 17, 2003, appellants executed assignments of their limited
partnership interests in LUSA to their respective Foundations (the
Assignments).[2]  In addition, on December 23, 2003, appellants
executed Trust Indentures regarding their assigned partnership interests so
that the Foundations would qualify as tax-exempt charitable supporting
organizations under sections 501(c)(3) and 509(a)(3) of the Internal Revenue
Code. 








The parties disagree
regarding the scope and effect of the Assignments.  Appellants contend that the Assignments were
made subject to the Partnership Agreement; therefore, until the Foundations
became substitute limited partners of LUSA, they received only the economic
benefits of appellants= partnership
interests and appellants retained their limited partner rights in LUSA.  Appellees, on the other hand, argue that
appellants transferred their entire partnership interests in LUSA to the
Foundations via the Assignments and, as a result, have lost their limited
partner statuses.

LUSA, through Haire, was
notified of the Assignments on December 23, 2003.  Although appellants eventually gave written
consent to the assignment of appellants= partnership interests to the Foundations effective December 17, 2003,
on January 23, 2004, Haire notified appellants that LUSA refused to recognize
the Foundations as substitute limited partners.[3]








In December 2004, appellants
sued appellees, alleging claims for breaches of fiduciary duty, minority
oppression, misappropriation of partnership assets, conspiracy, declaratory
relief, breach of the partnership agreement, and receivership.  Appellees filed a plea to the jurisdiction,
asserting that appellants lacked standing to sue because they had transferred
their partnership interests in LUSA to the Foundations.  After a three-day hearing, on January 6,
2006, the trial court granted the plea to the jurisdiction and dismissed all of
appellants= claims
against appellees.  On February 17, 2006,
the trial court severed appellants= claims into a separate proceeding so that the dismissal order would
become final and appealable.  This appeal
followed.

                               III.
Appellees= Motion to
Dismiss

Before
considering the merits of appellants= complaints on appeal, we must determine our jurisdiction over the
case.  Appellees have moved to dismiss
the appeal for want of jurisdiction. 
They contend that the trial court improperly severed appellants= claims after dismissing them based on appellants= lack of standing; therefore, the trial court=s judgment is interlocutory and unappealable.  We disagree.








The trial court=s order dismissing appellants= claims for lack of standing, coupled with the court=s order severing appellants= claims into a separately styled and numbered suit, operate as a final
judgment with regard to appellants= claims.[4]  Appellees seek to alter the trial court=s final judgment by reversing the severance order portion of the
judgment.  A party who seeks to alter a
trial court=s judgment
must file a notice of appeal.[5]
Appellees did not file a notice of appeal; therefore, they did not perfect an
appeal from the trial court=s judgment,[6]
and they may not seek to alter it by challenging the severance order in a
motion to dismiss.[7]








Further, even assuming, for
argument=s sake, that the severance order was improper, the alleged error does
not deprive us of jurisdiction over the appeal. 
A[A] judgment which possesses all of the attributes of finality
can[not] be regarded as interlocutory merely because the court may have erred
in ordering a severance which it had the power to grant.@[8]  Accordingly, we hold that we
have jurisdiction over the appeal, and we deny appellees= motion to dismiss.

                                   IV. Plea to the Jurisdiction

We now turn to appellants= complaints on appeal.  In three
issues, appellants complain that the trial court erred by granting appellees= plea to the jurisdiction and dismissing appellants= claims for lack of standing. 
Appellants argue that the trial court misconstrued the effect of their
Assignments to the Foundations under the Partnership Agreement, the Texas
Revised Limited Partnership Act, and the Assignments themselves and improperly
concluded that, as a result of the Assignments, appellants are no longer
limited partners under the Partnership Agreement.  








                                       A.
Standing to Sue








A plaintiff
must have standing to bring a lawsuit.[9]
The issue of standing focuses on whether a party has a sufficient relationship
with the lawsuit to have a justiciable interest in its outcome.[10]  A plaintiff has standing when he is
personally aggrieved, regardless of whether he is acting with legal authority.[11]  Thus, in Texas, the test for standing
requires that there be (1) a real controversy between the parties (2) that will
be actually determined by the judicial declaration sought.[12]  Standing is a component of subject matter
jurisdiction over a case;[13]
therefore, we apply a de novo standard of review to the trial court=s determination regarding standing.[14]  If a plea to the jurisdiction challenges the
existence of jurisdictional facts, we consider relevant evidence submitted by
the parties when necessary to resolve the jurisdictional issues raised, as the
trial court is required to do.[15]  In this case, the relevant evidence is the
Partnership Agreement and the Assignments.

             B. Construction of Partnership Agreement and
Assignments








When, as here, the
relationship among partners is governed by a written partnership agreement, the
agreement governs the rights of the parties.[16]  We construe both the Partnership Agreement
and the Assignments under the law of contracts.[17]  When a contract is unambiguous,[18]
we construe it as a matter of law.[19]  We give effect to the parties= intentions as expressed in the writing alone because it is objective,
not subjective, intent that controls.[20]  We give terms their plain, ordinary, and
generally accepted meaning,[21]
and we examine and consider the entire writing in an effort to harmonize and
give effect to all its provisions so that none will be rendered meaningless.[22]  Further, if the partnership agreement is
silent on a matter, we look to the Texas Revised Limited Partnership Act (the
Act) for guidance.[23]

Here, the Assignments provide
in pertinent part as follows:

WHEREAS, Assignor [appellants] desires to assign
to Assignee [the Foundations] . . . Assignor=s limited partnership
interest in the Partnership, subject to the terms and provisions hereof . . . .

 

NOW, THEREFORE, . . . .

 








1.  Assignment
of Limited Partnership Interest. 
Assignor hereby agrees to transfer, assign and convey to Assignee an
undivided [percentage] limited partnership interest in the Partnership
owned by Assignor (the AAssigned
Interest@),
which Assigned Interest is subject to the terms and conditions of the
Partnership Agreement.  Assignor
represents and warrants that this Assignment is an absolute and complete
assignment of the Assigned Interest and that there are no outstanding liens,
claims or encumbrances affecting the Assigned Interest or Assignor=s
ability to sell, transfer, convey and assign to Assignee the Assigned Interest,
except as provided in the Partnership Agreement.  Assignee acknowledges that the Assigned
Interest conveyed to Assignee hereunder does not constitute Assignor=s
[sic] admission as a limited partner of the Partnership unless and until such
time as Assignee is admitted as a limited partner in accordance with the terms
of Article 8 of the Partnership Agreement. 
Until such time as Assignee is approved as a substitute limited
partner under the Agreement, Assignee shall have all the rights of an assignee
of a limited partnership interest, including the right to share in the
income and losses of the Partnership and to be treated as the owner of a
limited partnership interest for federal income tax purposes, but shall not
have any rights as a limited partner under this Agreement.  [Emphasis supplied.][24]


 


















The Partnership Agreement
provides that a APartnership
Interest@ is Athe entire
ownership interest of a Partner in the Partnership at any particular time,
including the rights and obligations of the Partner under this Agreement and
the Act.@  Part or all of this interest
may be assigned.[25]  Unless the assignee is an AAffiliate@[26] of the assigning limited partner, however, article 8.5 of the
Partnership Agreement provides the assignee cannot become a substitute limited
partner unless (1) the assignee is approved by the partners as a substitute
limited partner and (2) the assignee satisfies four additional requirements,
including providing documentation of the transfer and signing an assumption
agreement.[27]  If the Assignee is an Affiliate, the partners= approval is not required, but the assignee still must satisfy the
four additional requirements to be admitted as a substitute limited partner.[28]  Although the parties disagree regarding whether
the Foundations are appellants= AAffiliates,@[29] they agree that the Foundations never became substitute limited
partners because they did not fulfill the conditions in article 8.5(a)B(d). 








The Partnership Agreement and
the Assignments contain identical provisions expressly providing that an
assignee has no limited partner rights unless and until it becomes a substitute
limited partner.[30]  Consequently, pursuant to both the
Partnership Agreement and the Assignments, the Foundations have only the rights
of an assignee of a limited partnership interest and, in the language of these
documents, Ashall not have
any rights as a Limited Partner.@[31]








Because the Foundations do
not have any limited partner rights as a result of the Assignments, we must
determine whether (1) appellants have retained their limited partner rights and
may continue to exercise them, as they contend, or (2) appellants have lost
their limited partner rights even though the Foundations cannot exercise those
rights, as appellees contend.  Although
the Partnership Agreement clearly spells out the effect of an assignee=s failure to become a substitute limited partner on the interests and
rights of the assignee, the Partnership Agreement is silent regarding
the effect of this failure on the rights of the limited partner.[32]  Further, the Partnership Agreement is silent
concerning whether the assignor must expressly reserve limited partner rights
until the assignee has been substituted as a limited partner or run the risk of
losing them.  Therefore, we turn to the
Act for guidance.[33]








Section 7.02(a)(4) of the Act
provides, Auntil the
assignee becomes a partner, the assignor partner continues to be a partner and
to have the power to exercise any rights or powers of a partner, except to the
extent those rights and powers are assigned . . . .@[34]  Regarding this provision, the
State Bar Committee comment explains, ASection 7.02(a)(4) leaves in the assignor all unassigned rights until
the assignee becomes a partner, unless the agreement is otherwise.@[35]  The purpose of this provision
is to assure that there will always be at least one person who can exercise
limited partner rights.[36]













In this case, appellants
assigned their Aundivided,@ Aabsolute and
complete@ limited partnership interests to the Foundations, but they did so Asubject to the terms and conditions of the Partnership Agreement@ and Aexcept as
provided in the Partnership Agreement.@  The phrase Asubject to@ is a term
of limitation.[37]  AThere is nothing in the use of the words >subject to,= in their
ordinary use, which would even hint at the creation of affirmative rights.@[38] Likewise, the purpose of an exception Ais to take something out of the contract which would otherwise have
been included in it.@[39]  Thus, appellants= assignment of their limited partner rights in LUSA to the Foundations
was made Asubject to@ the Foundations= becoming
substitute limited partnersCan event that has not yet occurred. 
Accordingly, construing the provisions in the Assignments and the
Partnership Agreement as a whole so that none is rendered meaningless,[40]
we hold that the appellants= assignment of their limited partner interests in LUSA caused their
economic interests in the partnership to pass to the Foundations;[41]
but the transfer of their limited partner rights in LUSA is Asubject to@ the
fulfillment of the conditions set out in article 8.5 of the Partnership
Agreement and will not be effective unless and until the Foundations become
substitute limited partners thereunder.[42]  Until the occurrence of this triggering
event, under section 7.02(a)(4) of the Act, appellants continue to be limited
partners in LUSA and to have the power to exercise their limited partner
rights.[43]

                                           V. Conclusion








For these reasons, we hold
that the trial court erred by granting appellees= plea to the jurisdiction and dismissing appellants= claims based on lack of standing. 
Accordingly, we sustain appellants= issues, reverse the trial court=s judgment granting appellees= plea to the jurisdiction, and render judgment denying the plea.     

 

JOHN CAYCE

CHIEF JUSTICE

 

PANEL
A:  CAYCE, C.J.; LIVINGSTON and MCCOY,
JJ.

 

DELIVERED:  August 31, 2007

 











[1]Tex. R. App. P. 47.4





[2]This
is the same date that JPC assigned its interests in LUSA and APL to appellants,
effective January 1, 2003.





[3]Appellees
contend that, after Haire refused to accept the Foundations as substitute limited
partners, appellants proceeded with the Assignments Aunbeknownst@ to
appellees.  This allegation is irrelevant
to our review because appellees do not contend that appellants=
alleged surreptitious conduct rendered the Assignments ineffective.  To the contrary, appellees acknowledge that
they expressly consented to the Foundations as assignees of appellants=
limited partnership interests in LUSACafter
appellees allegedly discovered the Afull nature@ of
the transfers.





[4]Ins.
Co. of State of Pa. v. Orosco, 170 S.W.3d 129, 135 (Tex.
App.CSan
Antonio 2005, no pet.); Aviation Composite Techs., Inc. v. CLB Corp.,
131 S.W.3d 181,187 n.5 (Tex. App.CFort Worth 2004, no pet.); see
Brown v. Todd, 53 S.W.3d 297, 300 (Tex. 2001) (AAfter
the trial court dismissed [appellant=s] claim for lack of
standing, he could have sought a severance so that the dismissal against him
would have been an appealable final judgment.@).  Appellees= counter-claims against
appellants remain pending in the original cause number.





[5]Tex. R. App. P. 25.1(c); Lubbock County,
Tex. v. Trammel=s
Lubbock Bail Bonds, 80 S.W.3d 580, 584 (Tex. 2002).





[6]See Tex. R. App. P. 25.1(a) (providing that
A[a]n
appeal is perfected when a written notice of appeal is filed@).





[7]See,
e.g., Lubbock County, Tex., 80 S.W.3d at 584 (holding that the
county could not seek to alter the trial court=s
partial summary judgment because the county did not file a notice of appeal); Boulle
v. Boulle, 160 S.W.3d 167, 176 (Tex. App.CDallas
2005, pet. denied) (holding that appellee had waived his complaint that the
trial court had improperly denied his motion to disqualify an attorney because
appellee had not filed a notice of appeal); Gore v. Scotland Golf, Inc.,
136 S.W.3d 26, 34 (Tex. App.CSan Antonio 2003, pet.
denied) (holding that the appellate court could not consider appellee=s
complaint that the trial court erred by overruling appellee=s
motion for partial JNOV because appellee had not filed a notice of appeal); see
also City of Houston v. Am. Resources, Inc., No. 01-99-01377-CV, 2002 WL
31941517, at *2 (Tex. App.CHouston [1st Dist.] Dec. 27,
2002, no pet.) (holding that, because notice of appeal was untimely, court of
appeals had no jurisdiction to correct any error in severance order).





[8]Pierce
v. Reynolds, 160 Tex. 198, 329 S.W.2d 76, 79 n.1 (1959); see
Schieffer v. Patterson, 433 S.W.2d 418, 419 (Tex. 1968) (following Pierce);
see also Rucker v. Bank One Tex., N.A., 36 S.W.3d 649, 652 (Tex. App.CWaco
2000, pet. denied); Nicor Expl. v. Fla. Gas Transmission Co., 911 S.W.2d
479, 482 (Tex. App.CCorpus
Christi 1995, writ denied); Rutherford v. Whataburger, Inc., 601 S.W.2d
441, 443 (Tex. Civ. App.CDallas
1980, writ ref=d
n.r.e.) (all holding that a trial court=s error in granting a
severance does not divest the court of appeals of jurisdiction over the
appeal).  But cf. Dalisa, Inc.
v. Bradford, 81 S.W.3d 876, 882 (Tex. App.CAustin
2002, no pet.) (dismissing properly perfected appeal for want of jurisdiction
after concluding that trial court=s judgment was not final
because severance order was improper); Cass v. Stephens, 823 S.W.2d 731,
734 (Tex. App.CEl
Paso 1992, no writ) (same), overruled on other grounds by In re Hoover, Bax
& Slovacek, L.L.P., 6 S.W.3d 646 (Tex. App.CEl
Paso 1999, orig. proceeding). 





[9]Coastal
Liquids Transp., L.P. v. Harris County Appraisal Dist., 46
S.W.3d 880, 884 (Tex. 2001); Antonov v. Walters, 168 S.W.3d 901, 904
(Tex. App.CFort
Worth 2005, pet. denied).





[10]Austin
Nursing Ctr., Inc. v. Lovato, 171 S.W.3d 845, 848 (Tex.
2005).





[11]Nootsie,
Ltd. v. Williamson County Appraisal Dist., 925 S.W.2d 659, 661
(Tex. 1996).





[12]Id. at
662.





[13]City
of Arlington v. Scalf, 117 S.W.3d 345, 347 (Tex. App.CFort
Worth 2003, pet. denied).





[14]Antonov, 168
S.W.3d at 904.





[15]Tex.
Dep=t of
Parks & Wildlife v. Miranda, 133 S.W.3d 217, 227 (Tex.
2004).





[16]Tex. Rev. Civ. Stat. Ann. art.
6132a-1, ' 7.02
(Vernon Supp. 2006); Hoagland v. Finholt, 773 S.W.2d 740, 742 n.4 (Tex.
App.CDallas
1989, no writ).





[17]Park
Cities Corp. v. Byrd, 534 S.W.2d 668, 672 (Tex. 1976); Dobson v.
Dobson, 594 S.W.2d 177, 180 (Tex. Civ. App.CHouston
[1st Dist.] 1980, writ ref=d n.r.e.).





[18]None
of the parties contend that the provisions in the Partnership Agreement and
Assignments at issue in this case are ambiguous. To the contrary, appellees
contend that the documents are Aclear and unambiguous.@ 





[19]City
of Pinehurst v. Spooner Add=n Water Co., 432
S.W.2d 515, 518 (Tex. 1968); Praeger v. Wilson, 721 S.W.2d 597, 600-01
(Tex. App.CFort
Worth 1986, writ ref=d
n.r.e.).





[20]City
of Pinehurst, 432 S.W.2d at 518.





[21]Kelley-Coppedge,
Inc. v. Highlands Ins. Co., 980 S.W.2d 462, 464 (Tex. 1998).





[22]J.M.
Davidson, Inc. v. Webster, 128 S.W.3d 223, 229 (Tex. 2003);
Coker v. Coker, 650 S.W.2d 391, 393 (Tex. 1983); R & P Enters. v.
LaGuarta, Gavrel & Kirk, Inc., 596 S.W.2d 517, 519 (Tex. 1980).





[23]Park
Cities Corp., 534 S.W.2d at 672; McLendon v. McLendon,
862 S.W.2d 662, 676 (Tex. App.CDallas 1993, writ denied); Hoagland,
773 S.W.2d at 742 n.4.





[24]Likewise,
the Trust Indentures provide that appellants, as grantors, assigned to the
Trustees of the Foundations all their Aright, title and interest in
and to the property described in the attached Schedule >A=@Cappellants= AUnits
of [LUSA]@Cbut
Schedule A specifically references the Assignments.  Thus, the scope of the interests and rights
conveyed to the Foundations by the Trust Indentures is governed by the
Assignments and the Partnership Agreement. 
See Jones v. Kelley, 614 S.W.2d 95, 98 (Tex. 1981) (AThe
general rule is that separate instruments or contracts executed at the same
time, for the same purpose, and in the course of the same transaction are to be
considered as one instrument, and are to be read and construed together.@); Wasaff
v. Lipscomb, 713 S.W.2d 730, 732 (Tex. App.CHouston
[14th Dist.] 1986, no writ) (same); see also In re Waggoner Estate, 163
S.W.3d 161, 168 (Tex. App.CAmarillo 2005, no pet.)
(rejecting a construction that did not harmonize partnership documents, but
unnecessarily brought them into conflict).





[25]Specifically,
article 8.1 of the Partnership Agreement provides as follows:

 

Restriction
Against Transfer.  No
Partner may . . . assign . . . all or any portion of his or its
Partnership Interest without the prior written consent of all other Partners,
except as provided in this Agreement. 
[Emphasis supplied.] 

 

Similarly, section 7.02(a)(1) of the Act provides that Aa
partnership interest is assignable in whole or in part.@  Tex.
Rev. Civ. Stat. Ann. art. 6132a-1, ' 7.02(a)(1).  This provision Acontemplates
that economic (profit allocation and distribution) rights can be assigned
without voting rights, but not vice versa.@  Id. cmt.  Appellees consented to the Foundations as
assignees of appellants=
limited partnership interests in LUSA (but not as substitute limited partners)
effective December 17, 2003, the date the Assignments were made.





[26]An AAffiliate@
includes a partner=s
spouse or immediate family member or a person Adirectly
or indirectly controlling, controlled by or under common control with the
Partner.@ 





[27]Specifically,
article 8.5 of the Partnership Agreement provides as follows:

 

Substitute
and Additional Limited Partners.  Should there occur a transfer of all or part
of a Partnership Interest pursuant to the terms and conditions of this Article
8, the transferee of the Partnership Interest shall become a substitute
Limited Partner only if Approved by the Partners, which approval may be
withheld for any or no reason.  Until
such time as the transferee is approved as a substitute Limited Partner, such
transferee shall be considered an assignee of a limited partnership interest
for the purpose of this Agreement and such transferee shall have all the rights
of an assignee of a limited partnership interest, including the right to share
in the income and losses of the Partnership and to be treated as the owner of a
limited partnership interest for federal income tax purposes, but shall not
have any rights as a Limited Partner under this Agreement.  In addition to receiving the Approval of the
Partners, a transferee of all or part of a Partnership Interest must satisfy
the following requirements prior to becoming admitted as a Limited Partner of
the Partnership:

 

(a)
the transferor and transferee provide written evidence of the transfer or
assignment acceptable to the Partners;

 

(b)
the transferee has executed an instrument reasonably satisfactory to the
General Partner accepting and adopting the terms and provisions of this
Agreement and agreeing to be bound by the terms and conditions hereof and
expressly assuming the liability of the transferor . . . ;

 

(c)
the transferee has paid or caused to be paid any reasonable expenses of the
Partnership incurred in connection with the admission of the transferee as an
additional or substitute Limited Partner; and

 

(d) at the election of
the General Partner, the Partnership receives an opinion of counsel for the
Partnership that such assignment would not result in the termination of the
Partnership for federal income tax purposes or produce any adverse income tax consequence
to the Partners, and that registration under the Securities Act of 1933 is not
required in connection with such transfer.





[28]Specifically,
article 8.4 provides as follows:

 

Transfer
of Partnership Interests to Affiliates.  Notwithstanding any provision contained
herein to the contrary, any Limited Partner may, during the term of this
Agreement, transfer all or a portion of her, his or its Partnership Interest to
any Affiliate of such Limited Partner, and such transferee shall be admitted as
. . . [a] substitute Limited Partners [sic] upon compliance with the terms of Section
8.4 [sicCread
8.5] hereof.  No Approval of the Partners
shall be required in order to effect such transfer and substitution,
notwithstanding the provisions of Article 8 to the contrary.

 

Although
this article refers to complying with the terms of article 8.4, the parties
agree that compliance with article 8.5(a)B(d) is actually required.





[29]Appellants
contend that the Foundations are Affiliates; appellees contend that they are
not. 





[30]Compare
article 8.5 of the Partnership Agreement, supra n.27, with
section 1 of the Assignments.





[31]See Tex. Rev. Civ. Stat. Ann. art.
6132a-1, ' 3.01(b)
(Vernon Supp. 2006) (providing that a person acquiring a partnership interest
from a limited partner becomes a new limited partner upon compliance with the
provisions of the partnership agreement governing the admission of new limited
partners or, in the absence of such provisions, on the written consent of all
partners); id. '
7.02(a)(2) (providing that, unless the partnership agreement provides
otherwise, the assignment of a partnership interest does not entitle the
assignee to exercise the rights and powers of a partner); In re Wilmot,
665 N.Y.S.2d 783, 784 (N.Y. App. Div. 1997) (holding that the assignee of a
limited partnership interest who had not been accepted as a substitute limited
partner acquired only the assignor=s right to receive
distributions and allocations of profits and losses from the partnership).





[32]In
contrast, the Partnership Agreement is not silent concerning the effect of an
involuntary transfer due to bankruptcy, death, divorce, or incompetence on
limited partner rights.  In those
situations, the economic benefits of the limited partnership interest pass to
the transferee, but the limited partner rights can no longer be exercised.  Specifically, article 5.3 of the Partnership
Agreement provides as follows:

 

Bankruptcy;
Death or Divorce.  The
Bankruptcy, death, divorce . . . or declaration of incompetence of a
Limited Partner shall not cause a dissolution of the Partnership, but the
rights of the Limited Partner to share in the profits and losses of the
Partnership and to receive distributions of Partnership funds shall, upon
the occurrence of any of these events, unless otherwise provided for herein, pass
on to the Limited Partner=s estate, legal
representative, former spouse, or successors in interest, as the case may be, and
the Partnership shall continue as a limited partnership. . . .  In no event shall the estate,
representative, former spouse or successors in interest become a Limited
Partner of the Partnership, nor be construed as a substituted limited
partner, as that term is used in the Act, nor shall such persons or entities
have any rights as a Limited Partner or any rights relative to the operations
or management of the Partnership. 
[Emphasis supplied.]

 

The
Partnership Agreement could have included this same provision with regard to
the voluntary assignment of limited partner rights, but it did not.  Instead, article 8.5 provides that the
assignee has no limited partner rights Auntil such time@ as
it becomes a substitute limited partner.





[33]Park
Cities Corp., 534 S.W.2d at 672; Dobson, 594 S.W.2d at
180.





[34]Tex. Rev. Civ. Stat. Ann. art.
6132a-1, '
7.02(a)(4) (Vernon Supp. 2006).





[35]Id. art.
6132a-1, '
7.02(a) cmt.





[36]Id.





[37]See,
e.g., Cockrell v. Tex. Gulf Suphur Co., 157 Tex. 10, 299 S.W.2d 672,
676 (1956) (holding that the words Asubject to,@ used
in their ordinary sense, mean Asubordinate to,@ Asubservient
to,@ or Alimited
by,@ and
their inclusion in a deed defines the nature, extent, and character of the
estate conveyed).





[38]Id.





[39]Lyons
v. Montgomery, 701 S.W.2d 641, 643 (Tex. 1985).





[40]See
Webster, 128 S.W.3d at 229.





[41]Pursuant
to the Assignments and the Partnership Agreement, the Foundations acquired only
the Aright
to share in the income and losses of the Partnership and to be treated as the
owner of a limited partnership interest for federal income tax purposes.@  See supra note 27.  As we have discussed, according to the
express provisions of the Partnership Agreement, these are not limited partner
rights.





[42]Appellees
argue that appellants took post-Assignment deductions on their federal income
tax returns for the Afull
amount@ of
their partnership interests, thereby evidencing that they conveyed all of their
limited partner rights to the Foundations. 
However, we determine the effect of the Assignments from appellants=
objective intent as expressed therein, not from appellants=
alleged after-the-fact conduct.  See
In re Dillard Dep=t
Stores, Inc., 186 S.W.3d 514, 515 (Tex. 2006) (orig.
proceeding).





[43]The
cases on which appellees rely as support for their position that appellants
ceased to be limited partners upon assignment of their partnership interests to
the Foundations are inapposite.  None of
the statutes in those cases contained section 7.02(a)(4)=s
provision that the assignee partner will continue to be a partner until the
assignee becomes a partner.  Instead, the
statutes expressly provided that the partner ceased to be a partner upon the
assignment of his partnership interest.  See
In re Tip O Tex. RV Village, 87 B.R. 195, 197 (Bankr. M.D. Fla. 1988); Everest
Investors, LLC v. Investment Assocs., II, No. CX-96-554, 1996 WL 509840, at
*2 (Minn. Ct. App. Sept. 10,  1996); Temple
v. White Lakes Plaza Ass=n, Ltd., 15
Kan. App. 2d 771, 816 P.2d 399, 404, 406 (Kan. Ct. App. 1991).  Further, appellees=
reliance on Thomas v. Price is misplaced because the security agreement
assigning the limited partner=s partnership interest gave
the assignee the partner=s
economic interests and the right to exercise the partner=s
management rights in the event of a default. 
718 F. Supp. 598, 601 (S.D. Tex. 1989), aff=d, 975
F.2d 231 (5th Cir. 1992). Because all of these rights were expressly assigned,
the Thomas court held that the limited partner ceased to be a partner
after the default occurred.  Id.
at 607.  Here, however, the event that
would trigger appellants=
ceasing to be limited partnersCthe Foundations=
acceptance as substitute limited partnersChas not occurred.